No. 95,854

STATE OF KANSAS, *Appellee*, v. ROBERT J. GAUDINA, *Appellant*.

(160 P.3d 854)

Opinion filed June 22, 2007.

*Stephen B. Chapman*, of Olathe, was on the brief for appellant.

*Steven J. Obermeier*, assistant district attorney, argued the cause, and *Paul J. Morrison*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This case raises the question of whether time spent in prison beyond the prison term can reduce the term of post-release supervision. The question arises after Robert Gaudina's

sentence was vacated on appeal and the prison term imposed on remand was for a shorter time than the time Gaudina had already served. Gaudina seeks to credit that excess period of imprisonment against the postrelease supervision portion of his sentence. We hold Gaudina is not entitled to have the prison time credited against the postrelease supervision time and reject his statutory construction, double jeopardy, and equal protection arguments.

To place the issue in its factual context, we must consider the history of Gaudina's two prior appeals. Gaudina was convicted by a jury in May 1996 of aggravated burglary and aggravated battery. At a sentencing hearing conducted August 15, 1996, the trial court granted the State's motion for upward departure and imposed consecutive sentences that were double the maximum presumptive sentences for each conviction. The total sentence was for a prison term of 150 months with 36 months of postrelease supervision. The Court of Appeals affirmed on direct appeal in *State v. Gaudina*, No. 78,698, unpublished opinion filed February 18, 2000, *rev. denied* 269 Kan. 936 (2000) (*Gaudina I*). See *Gaudina v. State*, 278 Kan. 103, 92 P.3d 574 (2004) (*Gaudina II*, decision includes case's history).

Approximately 4 months after the decision in *Gaudina I*, the United States Supreme Court decided *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), and required any fact used to increase the penalty for a crime other than a previous conviction to be submitted to a jury and found beyond a reasonable doubt. This change in sentencing laws led to our Kansas decision in *State v. Gould*, 271 Kan. 394, 413, 23 P.3d 801 (2001), in which this court found K.S.A. 2000 Supp. 21-4716 unconstitutional on its face because it allowed a judge rather than a jury to find that aggravating factors justified an increase in the length of a sentence beyond the presumptive sentence. The *Gould* court also held that *Apprendi* would not be given retroactive effect. 271 Kan. at 414.

Subsequently, Gaudina filed a K.S.A. 60-1507 motion, arguing that his enhanced sentence should be vacated under *Apprendi*. The district court summarily denied the motion, and Gaudina appealed. See *Gaudina II*, 278 Kan. 103. His appeal was transferred to this

court for consideration of the principal issue of whether providing Gaudina relief would require retroactive application of *Apprendi*. The *Gaudina II* court concluded Gaudina's case was not final at the time *Apprendi* was decided because the time for filing a petition for writ of certiorari had not expired. 278 Kan. at 106-07. Gaudina's sentence was vacated and his case was remanded for resentencing. 278 Kan. at 108.

On remand, Gaudina was resentenced on September 30, 2004. He received a controlling sentence of 77 months' imprisonment and 36 months' postrelease supervision. Although not substantiated by any citations to the record on appeal, Gaudina contends that his prison sentence of 77 months was completed as of January 31, 2002, meaning he served 32 months beyond his sentence. At the resentencing hearing, Gaudina argued he should receive credit toward his postrelease supervision period for this 32 months. He argued that the failure to give him such credit would violate Kansas statutes and the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

The district court rejected Gaudina's argument:

"There is jail time, in custody time, and then there is time on probation. Probation time is not time which ordinarily the court gives credit . . . towards the sentence. The only exception is the residential center. So in terms of the state postrelease duration or state parole, if you will, the court's not going to distinguish that by any time the defendant has served in excess of the time that has now been imposed on resentencing."

Consequently, the district court refused to credit the postrelease supervision period with the excess time Gaudina spent in custody.

Gaudina appealed and a majority of the Court of Appeals upheld the district court's decision in *State v. Gaudina*, No. 95,854, unpublished opinion filed October 20, 2006. Gaudina raised three issues on appeal: (1) The resentencing court erred by refusing to apply jail time credit to his postrelease supervision period for the time he was incarcerated in excess of the lawful prison time as recalculated; (2) the district court's denial of credit toward Gaudina's term of postrelease supervision violated his constitutional rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution; and (3) the district court's denial

of credit against Gaudina's postrelease period, while granting credit to inmates who violate their postrelease conditions, denied him the constitutional right to equal protection under the law.

The majority rejected each contention. First, the majority observed that the Kansas Legislature had mandated postrelease supervision after the sentence of confinement and had not provided for time served to be credited against the period of postrelease supervision. With regard to Gaudina's double jeopardy claim, the majority determined that a similar argument was rejected in *Phillpot v. Shelton*, 19 Kan. App. 2d 654, 875 P.2d 289, *rev. denied* 255 Kan. 1003 (1994). Finally, with respect to Gaudina's equal protection argument, the majority declined to address the merits because Gaudina raised this constitutional issue for the first time on appeal. *Gaudina*, slip op. at 16.

Judge, now Justice, Johnson dissented and would have granted Gaudina credit for time served against what was characterized as Gaudina's "complete sentence," including credit against his postrelease supervision period. *Gaudina*, slip op. at 19 (Johnson, J., dissenting).

ISSUE 1: *Is Gaudina entitled to credit his postrelease supervision period with the time he served in excess of the term of imprisonment imposed at resentencing?*

In his first issue before this court, Gaudina contends that the Kansas Sentencing Guidelines Act (KSGA) permits the postrelease portion of a sentence to be served in custody and, therefore, the district court erred by denying him credit against his term of postrelease supervision.

### Standard of Review

The resolution of this issue requires this court to construe language within the relevant provisions of the KSGA. Statutory interpretation involves a question of law over which appellate review is unlimited. *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2005). The fundamental rule of statutory construction is to determine the legislature's intent. We presume the legislature expressed its intent through the language of the statutory scheme. Ordinary

words are to be given their ordinary meanings and technical words their technical meaning. When a statute is plain and unambiguous, an appellate court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006). Additionally, various provisions of an act *in pari materia* must be construed together in an effort to reconcile the provisions so as to make then consistent, harmonious, and sensible. *In re Estate of Sauder*, 283 Kan. 694, 156 P.3d 1204, 1211 (2007); *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 768, 69 P.3d 1087 (2003).

### Statutory Context

The first relevant provision of the KSGA dictates that "if the judge sentences the defendant to confinement" the judge must "pronounce the complete sentence which shall include the prison sentence, the maximum potential reduction to such sentence as a result of good time and the period of postrelease supervision." K.S.A. 2006 Supp. 21-4704(e)(2). This requirement clearly mandates and defines two segments of the bifurcated sentence: the period of confinement and the period of postrelease supervision.

Drawing a distinction between the two segments is consistent with the meaning of the terms. "Confinement," a term of ordinary meaning, is "[t]he act of imprisoning or restraining someone; the state of being imprisoned or restrained." Black's Law Dictionary 318 (8th ed. 2004). In contrast, the term "postrelease supervision" has "particular technical meaning under the [KSGA]." *Fanning v. State*, 25 Kan. App. 2d 469, 470, 967 P.2d 1083, *rev. denied* 266 Kan. 1108 (1998). It is defined by statute as

"the *release of a prisoner to the community after having served* a period of imprisonment or equivalent time served in a facility where credit for time served is awarded as set forth by the court, subject to conditions imposed by the Kansas parole board and to the secretary of correction's supervision." (Emphasis added.) K.S.A. 21-4703(p).

Likewise, previous Kansas case law has reiterated that postrelease supervision is the portion of the sentence that does not begin until the confinement portion of the sentence has been served. *White*

*v. Bruce,* 23 Kan. App. 2d 449, 453, 932 P.2d 448 (1997); *Faulkner v. State,* 22 Kan. App. 2d 80, 83, 911 P.2d 203, *rev. denied* 259 Kan. 927 (1996). This conclusion is reinforced by K.S.A. 2006 Supp. 22-3717(q) which provides, in part, that "[i]nmates shall be released on postrelease supervision upon the termination of the prison portion of their sentence."

These statutory provisions and definitions draw the distinction between being confined or imprisoned and being released into the community. That distinction is both substantive and temporal. Substantively, while confined, a defendant is removed from society and severely restricted in activities and conduct for the primary purposes of penalizing the defendant while protecting society. While on postrelease supervision, the defendant is in the community and the parole board is empowered to impose conditions targeted toward facilitating rehabilitation, restitution, and safe reintegration into society. See K.S.A. 2006 Supp. 22-3717(m) (parole board shall consider and may order the defendant to pay certain costs, make progress toward or complete a secondary education, and perform community or public service work). Temporally, the period of postrelease supervision does not occur during imprisonment but only comes *"after* having served a period of imprisonment" ([emphasis added] K.S.A. 21-4703[p]) and "upon the termination of the prison portion" of the sentence (K.S.A. 2006 Supp. 22-3717[q]). These requirements are inconsistent with Gaudina's arguments.

Similarly, provisions that grant credit for time served do not support Gaudina's arguments. The primary provision regarding credit for time served, K.S.A. 2006 Supp. 21-4614, requires the judge to include in the sentencing order the date on which the sentence begins. This date is utilized to determine the date the defendant is eligible for parole or conditional release. "[S]uch date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case . . . ." K.S.A. 2006 Supp. 21-4614. Good time allowances are allowed "from such date as though the defendant were actually incarcerated in any of the institutions of the state correctional system. Such jail time credit is not to be

considered to reduce the minimum or maximum terms of confinement." K.S.A. 2006 Supp. 21-4614.

Although the term "jail time credit" is not specifically defined by Kansas statute, the Department of Corrections promulgated regulations defining the term: " 'Jail credit' and 'JC' mean the time spent in confinement, pending the disposition of the case, before the sentencing to the custody of the secretary of corrections pursuant to K.S.A. 21-4614 and amendments thereto . . . ." K.A.R. 44-6-101(c)(1). This definition reiterates that the time for which credit is given is the time spent in confinement before disposition. In contrast, the regulation defines penal credit as relating to time incarcerated on the sentence and indicates that time is applied when the sentence is subsequently aggregated due to the imposition of a consecutive sentence. K.A.R. 44-6-101(c)(3). Clearly, the provision does not apply to Gaudina's situation, and Gaudina cites no statute or regulation allowing penal credit to be applied toward the period of postrelease supervision.

These statutory and regulatory provisions lead to the conclusion that postrelease supervision is a separate segment of the sentence and any credit for time spent in confinement is credited against time spent incarcerated, not against postrelease supervision.

To dispute this conclusion and to support his contention that the postrelease supervision period can be served in custody, Gaudina cites three statutory provisions—K.S.A. 2006 Supp. 22-3717(q), K.S.A. 22-3722, and K.S.A. 2006 Supp. 75-5217(c). These statutes were also cited by Judge Johnson in his dissenting opinion.

The first of these provisions, K.S.A. 2006 Supp. 22-3717, addresses postrelease supervision eligibility and conditions; subsection (q) includes the provision already noted ("[i]nmates shall be released on postrelease supervision upon the termination of the prison portion of their sentence") and further states: "Time served while on postrelease supervision will vest."

A reference to the vesting of the time served while on postrelease supervision is also found in K.S.A. 22-3722, the second provision cited by Gaudina. K.S.A. 22-3722 addresses the service and discharge of postrelease supervision. That statute provides: "The period served on postrelease supervision shall vest in and be

subject to the provisions contained in K.S.A. 75-5217 and amendments thereto relating to an inmate who is a fugitive from or has fled from justice. The total time served shall not exceed the postrelease supervision period established at sentencing." Important to our interpretation of the provision is the different treatment given to the period served on parole or conditional release. That time "shall be deemed service of the term of confinement," and "the total time served may not exceed the maximum term or sentence." K.S.A. 22-3722. The distinction once again brings into focus the legislative intent that postrelease supervision is a distinct period of the sentence. In contrast, the system of parole is tied to the sentence of confinement and the time served on parole is limited by the sentence of confinement. The time served on postrelease supervision is not; it is limited solely by the term of the postrelease supervision.

These provisions must be read in conjunction with K.S.A. 2006 Supp. 75-5217 which dictates when time will be served on postrelease supervision, namely when there is a violation of postrelease supervision conditions. K.S.A. 2006 Supp. 75-5217(b) applies if a defendant violates a condition of supervision other than the condition that the defendant not commit a new offense. If subsection (b) applies, the defendant will be confined for a maximum of 6 months. Subsection (c) of the same statute—the third provision on which Gaudina relies—provides that, if the violation results from a new felony conviction, "upon revocation, the inmate shall serve the entire remaining balance of the period of postrelease supervision even if the new conviction did not result in the imposition of a new term of imprisonment." Under these provisions, when read with K.S.A. 22-3722, time served on postrelease supervision is segregated from time served before a prisoner is released to postrelease supervision, with the time served on postrelease supervision applying toward the period of postrelease supervision. Other than some interrelationship relating to good time credit, the two segments are independent of one another.

Gaudina argues otherwise, suggesting that, read as a whole, the above statutes do not express an intent that an individual serve the length of his or her postrelease supervision period twice—first

while being held in custody based on the original sentence and, again, by receiving a full-length postrelease supervision period upon being resentenced to a prison term he or she has long since exceeded. He further argues both portions of the "complete sentence" contemplate the prisoner being subject to the Secretary of Correction's supervision. This intent was fulfilled, he argues, when he remained in custody beyond the length of his new prison sentence. Finally, he argues that if postrelease supervision runs during the period of confinement for a violation of postrelease supervision conditions as stated in K.S.A. 2006 Supp. 22-3717(q), K.S.A. 2006 Supp. 75-5217(c), and K.S.A. 22-3722, it must also run during the imprisonment of "compliant" prisoners such as Gaudina. Any contrary interpretation, according to Gaudina, would thwart the plain language of the KSGA sentencing scheme. Finally, Gaudina seeks refuge in the rule that penal statutes must be strictly construed in favor of the defendant. See *State v. Sullivan*, 17 Kan. App. 2d 771, 772, 844 P.2d 741 (1993).

Each of these arguments is persuasive to some degree, especially when augmented by the reality that Gaudina was confined for significantly longer than his prison term. Yet our ability to correct that situation is limited to the authority granted by statute. Those statutes do not authorize the credit and for us to order the credit would be contrary to legislative intent. The interpretation of the provisions must be reasonable and sensible to fulfill legislative design and intent even though they are criminal statutes that must be construed strictly. *White v. Bruce*, 23 Kan. App. 2d 449, 453-54, 932 P.2d 448 (1997) (citing *Sullivan*, 17 Kan. App. 2d at 772). The legislative design is clear: The legislature mandated postrelease supervision as part of the complete sentence (K.S.A. 2006 Supp. 21-4704[e][2]) and, in defining postrelease supervision to mean "the release of a prisoner to the community after having served a period of imprisonment" (K.S.A. 21-4703([p]), the legislature clearly expressed that the postrelease supervision is a period when the defendant is released into the community—not a period while incarcerated—and occurs after confinement—not during confinement. Although the defendant may again be incarcerated if conditions are violated, the time served is in addition to the original prison

term not in place of the original term. Perhaps most important to our conclusion, Gaudina provides no statutory authority for a court, the Secretary of Corrections, or anyone to do what Gaudina seeks—credit his postrelease supervision period with his penal time.

Moreover, the statutory interpretation Gaudina seeks would require us to ignore prior interpretations of the various statutory provisions we have discussed.

## White and Faulkner

As observed by the majority of the Court of Appeals, previous Kansas cases have declined to apply credit to the postrelease supervision portions of offenders' sentences in other contexts. Two cases, while not factually similar, support the concepts that the two phases of the sentence—confinement and postrelease supervision—are mandated and each segment is treated separate from the other.

In *White v. Bruce*, 23 Kan. App. 2d 449, 932 P.2d 448, *rev. denied* 262 Kan. 969 (1997), the Court of Appeals addressed the issue of whether Kansas law requires the application of credit against an unrevoked period of postrelease supervision for time a prisoner spent incarcerated on another charge. The defendant's argument relied on the assumption that he remained on postrelease supervision, in spite of his incarceration, until the parole board revoked his postrelease supervision. The *White* court rejected the argument, commenting that "such a proposition seems fundamentally illogical." 23 Kan. App. 2d at 452. The panel cited the statutory definition of postrelease supervision and concluded that the defendant ceased serving his postrelease supervision period upon his reincarceration since he was "no longer released to the community." 23 Kan. App. 2d at 452. Further commenting that "incarceration and postrelease supervision are independent concepts," the *White* court stated that "an inmate cannot logically remain on postrelease supervision if that inmate is incarcerated." 23 Kan. App. 2d at 453. Holding that the defendant's postrelease supervision was interrupted and suspended by his reincarceration, the court determined that the time he spent incarcerated did not

vest as credit against his postrelease supervision period. 23 Kan. App. 2d at 455.

Gaudina asserts that *White* supports his contention that postrelease supervision time should be credited where the inmate has been held in custody solely on the pending case at hand. Because *White* held that the petitioner could not receive credit against an unrevoked term of postrelease supervision during the time he was incarcerated on another charge, Guadina argues that the holding in *White* is consistent with the proposition that incarceration on the same charge yields credit against the postrelease supervision period.

In response, the State points to other situations where defendants have not received jail time credit. For example, in *State v. Guzman*, 279 Kan. 812, 112 P.3d 120 (2005), this court held that the defendant was not entitled to jail time credit for the period that he was under house arrest while awaiting trial and sentencing for aggravated robbery and aggravated assault on a law enforcement officer. We rejected the defendant's argument that his house arrest, where he was electronically monitored and ordered to be "locked down" 24 hours a day, qualified as incarceration under the K.S.A. 21-4614. 279 Kan. at 815.

Likewise, in *State v. Palmer*, 262 Kan. 745, 942 P.2d 19 (1997), this court denied jail time credit for the defendant's time spent in a community residential facility, which was a condition of his appearance bond. We specifically stated: "K.S.A. 21-4614 does not authorize or require that time an individual resides in a private residential facility as a condition of preconviction appearance bond be credited as time spent 'incarcerated' pending disposition of a case." 262 Kan. at 754; see also *State v. Parks*, 27 Kan. App. 2d 544, 6 P.3d 444 (2000) (denying jail time credit for defendant's time spent under house arrest with electronic monitoring, which was condition of appeal bond); *State v. Williams*, 18 Kan. App. 2d 424, Syl. ¶ 4, 856 P.2d 158 (1993) (K.S.A. 21-4614a does not authorize or require jail time credit for time spent under house arrest as condition of probation). Compare *State v. Mackley*, 220 Kan. 518, 552 P.2d 628 (1976) (granting defendant 109 days of jail time credit for time spent not in jail, but in state hospital for competency

and mental evaluations). For a general discussion of credit for time served, see Pierce, *Giving Credit Where Credit is Due: The Kansas Law on Jail Time Credit*, 69 J.K.B.A. 22 (2000).

Consistent with these cases, we do not read *White* as suggesting that time served in custody, even if on the same case, must be credited against the total bifurcated sentence.

In a second case suggesting that the legislature intended the two segments of the bifurcated sentence to be segregated, *Faulkner v. State*, 22 Kan. App. 2d 80, 911 P.2d 203, *rev. denied* 259 Kan. 927 (1996), the defendant was initially sentenced to an indeterminate sentence of 1- to 5-years' imprisonment. He was released on parole, which was later revoked. Following the revocation, his sentence was converted to 10 months' imprisonment and 12 months' postrelease supervision under the KSGA. The defendant filed a motion under K.S.A. 60-1507 attacking his sentence, arguing the 14 months he spent on parole should have been credited to satisfy his postrelease supervision time under the converted sentence. The *Faulkner* court determined that "time spent on parole under an indeterminate sentence may not be credited to the postrelease supervision period of a converted sentence." 22 Kan. App. 2d at 83.

Distinguishing parole from postrelease supervision, *Faulkner* observed that Kansas statutes and case law established that time spent on parole is time spent in "custody" and parolees are given credit against time served in such confinement. In contrast, *Faulkner* cited the definition of postrelease supervision and held: "Postrelease supervision . . . does not begin until after the confinement portion of the sentence has been served. The only instance in which inmates will be required to serve their postrelease supervision time in custody is when the inmate violates the terms of the postrelease supervision." 22 Kan. App. 2d at 83.

Gaudina points out that, unlike the defendant in *Faulkner*, he did not serve his postrelease time in custody because of a violation of the conditions of his postrelease supervision. Instead, he was in prison during what should have been his postrelease supervision period and he was there because the district court erroneously denied his petition seeking a correction of his sentence under *Apprendi*. By the time the appeal process ended and his sentence was

corrected, Gaudina had been held for the entire length of his legal prison sentence and almost the entire length of a 36-month post-release supervision term. (Gaudina alleges that he was held 32 months beyond the new prison term.)

While arguing that the facts in *Faulkner* are not on point with this case, Gaudina also argues that *Faulkner* discusses one matter regarding postrelease supervision that, by analogy, supports his position. Although *Faulkner* held that time spent on parole under an indeterminate sentence may not be credited to the postrelease supervision period of a converted sentence, *Faulkner* also stated: "However, it is . . . true that time spent on a converted sentence cannot exceed the time required to serve the indeterminate sentence." 22 Kan. App. 2d at 83 (citing *State v. Fierro*, 257 Kan. 639, 645-46, 895 P.2d 186 [1995]). *Faulkner* went on to explain the circumstances where a petitioner would not be subject to postrelease supervision:

"If the petitioner has served his entire 1- to 5-year sentence either by confinement or by time spent on parole or by a combination of both, he cannot also be required to serve postrelease supervision time under his converted sentence. This would have the effect of extending his guidelines sentence beyond the time called for by the original indeterminate sentence. If petitioner has not completely served his indeterminate sentence of 1 to 5 years, he remains subject to postrelease supervision time under his converted sentence and cannot be credited with the time spent on parole." 22 Kan. App. 2d at 84.

Gaudina argues that he, too, by analogy, served the entire term of his "bifurcated sentence" in prison and should not be required to serve additional postrelease time upon being belatedly resentenced to the lawful term of imprisonment.

This dicta from *Faulkner* does not suggest this conclusion, however. When Faulkner was sentenced, it was contemplated he would serve either his maximum sentence and be discharged from custody or serve less than the maximum and be paroled. Upon conversion, his sentence could not be made longer than the sentence originally imposed. K.S.A. 21-4724. If the entire sentence had been served, there could be no period, however labeled, extending the sentence. Additionally, as discussed, K.S.A. 22-3722 provides that time served on parole is applied to the sentence of confinement.

In contrast, the statute provides that the total time served on postrelease supervision is capped by the period of postrelease supervision imposed at sentencing. In other words, under the sentencing scheme in effect when Gaudina was sentenced, it was contemplated he would serve a period of postrelease supervision regardless of whether he served every day of the prison sentence imposed or whether he earned good time credit allowing an early release from prison.

*White* and *Faulkner* support the proposition that the language of K.S.A. 2006 Supp. 21-4614 suggests that any credit for time served pending the disposition of a case applies only to the confinement portion of the defendant's sentence. Postrelease supervision is not confinement and, therefore, credit for time spent incarcerated was not applicable to Gaudina's postrelease supervision period.

### *Phillpot v. Shelton*

Finally, reading of the KSGA is consistent with a third case; this case presented facts that were very analogous to Gaudina's situation. In *Phillpot v. Shelton*, 19 Kan. App. 2d 654, 875 P.2d 289, *rev. denied* 255 Kan. 1003 (1994), a different Court of Appeals panel dealt with an issue similar to the one at hand. *Phillpot* involved several inmates whose sentences had been converted under the KSGA. These inmates had all been confined, before the time of sentence conversion, for time in excess of the combined imprisonment and postrelease supervision periods of their converted sentences. Thus, they asked to have the time which they served in excess of their presumptive imprisonment sentences credited against the 12-month postrelease supervision period of those sentences. The inmates contended that the time they spent incarcerated under the prior sentencing statutes should apply to satisfy both the prison and postrelease supervision requirements of the KSGA.

The *Phillpot* court held that time spent in prison under a pre-KSGA sentence did not satisfy both the imprisonment and the postrelease supervision portions of a converted KSGA sentence:

"A reading of the statutes indicates that, under the [Kansas Sentencing] Guidelines [Act], a defendant is to serve a bifurcated sentence—incarceration followed

by postrelease supervision. [Citation omitted.] In addition, other than the interplay of good time credit, these two parts are effectively independent from one another. [Citation omitted.] Further, the statutes indicate postrelease time is mandatory and comes after a defendant has been released from incarceration. [Citation omitted.] Because appellants have served only a period of incarceration under their indeterminate sentences, they are subject to postrelease supervision upon their release from incarceration." 19 Kan. App. 2d at 664.

The *Phillpot* court also pointed out that a sentence cannot be increased in length as a result of conversion under the KSGA. 19 Kan. App. 2d 654, Syl. ¶ 7. The Court of Appeals rejected the inmates' contention that, because under the KSGA they would have completed their required term of imprisonment over a year ago, the inmates already effectively served the postrelease portion of their sentences as well. Since they still had time left to serve before their sentences were converted and because they only served prison time, the inmates remained liable to postrelease supervision upon their releases from incarceration. 19 Kan. App. 2d at 663-64.

Gaudina argues that *Phillpot* is distinguishable in that it dealt with the conversion of indeterminate prison sentences, not resentencing under the KSGA in light of *Apprendi*. But *Phillpot* is instructive because it emphasizes the legislature's intent that a defendant is to serve a bifurcated sentence—imprisonment followed by postrelease supervision—and that these two parts are effectively independent from each other. Similar to the situation in *Phillpot*, Gaudina's prison sentence under new law was decreased in length. Gaudina's sentence under the previous law had not been fully served, and he had only served time in prison. The Kansas Legislature mandates that inmates shall be released on postrelease supervision upon the termination of the prison portion of their sentence.

Based on a reading of the statutes and Kansas appellate courts' previous interpretation of those statutes, we conclude that Gaudina is subject to postrelease supervision upon his release from incarceration. Furthermore, Gaudina is not entitled to a credit against his postrelease supervision period for the time he served on his original sentence that was in excess of the sentence imposed on remand.

ISSUE 2: *Did the district court's ruling violate the prohibition against double jeopardy?*

Next, Gaudina contends the district court's refusal to apply credit toward his postrelease supervision period violated his constitutional rights under the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

## Standard of Review

The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights prohibit multiple punishments for a single offense. The issue of whether there is a double jeopardy violation is a question of law subject to unlimited review. See *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006).

As a preliminary matter, the State argues that Gaudina failed to sufficiently raise the double jeopardy issue before the district court and, therefore, the issue should not be addressed by this court. As the Court of Appeals observed, however, Gaudina briefly argued during the resentencing hearing that "if you make someone serve in excess of that sentence, what it should lawfully be, then you are in violation of . . . [the] Double Jeopardy Clause . . . ." The district judge stated: "I understand your argument. We are going to do the resentencing today and that's all we will take up today."

Because Gaudina did raise the issue before the trial court and because the Court of Appeals addressed the merits of the argument, the merits are appropriately addressed here.

In support of his double jeopardy argument, Gaudina cites *North Carolina v. Pearce*, 395 U.S. 711, 718, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969), *overruled on other grounds Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865, 109 S. Ct. 2201 (1989), where it was held that a defendant is subjected to a double jeopardy violation when "punishment already endured is not fully subtracted from any new sentence imposed." In *Pearce*, the defendant's conviction was reversed after he had served several years in prison, was retried, and was then sentenced to a period "which, when added to the time Pearce had already spent in prison, . . . amounted to a

longer total sentence than that originally imposed." 395 U.S. at 713. The *Pearce* Court held that the constitutional guarantee against multiple punishments for the same offense absolutely required that the defendant be fully credited for the punishment already served for that offense. 395 U.S. at 718-19.

In contrast to the situation involving punishment already served on the same offense, Kansas appellate courts have denied credit for time spent under supervised probation as time served on the sentence in the event probation is revoked. See, *e.g., State v. Snook*, 1 Kan. App. 2d 607, 571 P.2d 78 (1977). Likewise, this court has held that the automatic forfeiture of credit for time a defendant successfully served on parole before it was revoked for committing a new offense while on parole did not violate double jeopardy. *Hudson v. State*, 273 Kan. 251, 259-60, 42 P.3d 150 (2002); see *Anderson v. Bruce*, 274 Kan. 37, 42, 50 P.3d 1 (2002).

Here, the Court of Appeals determined that Gaudina's double jeopardy argument was previously rejected by the *Phillpot* decision. In arguing that they were entitled to credit for time spent in prison under the prior sentencing statutes to satisfy both the incarceration and postrelease supervision requirements of the new KSGA, the *Phillpot* inmates, like Gaudina, relied upon *Pearce*. The *Phillpot* court found *Pearce* was inapplicable when, upon resentencing, a postrelease supervision period is imposed in accordance with the KSGA. *Phillpot*, 19 Kan. App. 2d at 663-64. We agree with this analysis.

Moreover, as the *Phillpot* court observed, *Pearce* held that a double jeopardy violation can occur " 'whenever punishment already endured is not fully subtracted from any new sentence imposed.' 395 U.S. at 718." 19 Kan. App. 2d at 663. But the *Phillpot* court also pointed out that "[t]his portion of the *Pearce* decision has been tempered by later decisions to the extent that it was overruled in *Alabama v. Smith*, 490 U.S. at 794." 19 Kan. App. 2d at 663. (*Alabama v. Smith*, 490 U.S. 794, 801-03, 104 L. Ed. 2d 865, 109 S. Ct. 2201 [1989], held that the *Pearce* presumption of vindictiveness does not apply when a sentence imposed after trial is greater than that previously imposed after a guilty plea.).

Finding that *Pearce* was factually distinguishable, the *Phillpot* court noted that the Kansas inmates were not sentenced to more severe sentences. In addition, postrelease supervision is mandatory and distinct from imprisonment. 19 Kan. App. 2d at 663. In so stating, the court further stated that, by implementing postrelease supervision and eliminating parole, the Kansas Legislature "clearly intended that prisoners be subjected to some community supervision upon their release from incarceration" exemplifying an "intent that inmates be reintegrated into society through a supervised program." 19 Kan. App. 2d at 663. The *Phillpot* court implicitly found no double jeopardy violation and stated: "[I]t does not follow ·that time served under an indeterminate sentence should necessarily be applied to the [KSGA's] postrelease supervision requirement." 19 Kan. App. 2d at 664.

Similar to *Phillpot*, a subsequent change in the law in the present case occurred between Gaudina's sentencing and resentencing which decreased his term of imprisonment. It is true that this change did not decrease the postrelease supervision period. Even so, Gaudina was not subjected to an increased term of imprisonment or postrelease supervision upon resentencing. He was merely sentenced in accordance with the KSGA. We agree with the Court of Appeals' determination that there is no double jeopardy violation in requiring Gaudina to serve the full extent of the postrelease supervision period imposed at the time of sentencing without allowing a credit against the postrelease supervision period for any excess time he spent in prison.

ISSUE 3: *Did the district court's ruling violate equal protection?*

Finally, Gaudina contends that the district court's refusal to apply credit against his postrelease supervision period for excess time spent in custody, while granting credit to inmates who violate their postrelease conditions, violated the Equal Protection Clause under the Fourteenth Amendment to the United States Constitution and §§ 1 and 2 of the Kansas Constitution Bill of Rights.

### Standard of Review

Gaudina essentially argues that the KSGA violates equal protection by denying him credit toward his postrelease supervision term.

"Whether a statute violates equal protection is a question of law over which this court has unlimited review." *State v. Mueller*, 271 Kan. 897, 902, 27 P.3d 884 (2001); see *State v. Limon*, 280 Kan. 275, 283, 122 P.3d 22 (2005).

We first note that Gaudina failed to raise this issue before the district court. Generally constitutional grounds for reversal asserted for the first time on appeal are not properly preserved for appellate review. *State v. Gonzalez*, 282 Kan. 73, 114, 145 P.3d 18 (2006); *State v. Williams*, 275 Kan. 284, 288, 64 P.3d 353 (2003). But appellate courts may consider constitutional issues raised for the first time on appeal if the issue falls within the three recognized exceptions. The threshold question is whether consideration of the newly asserted claim is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *State v. Moody*, 282 Kan. 181, 192, 144 P.3d 612 (2006); *Williams*, 275 Kan. at 288-89.

Here, the Court of Appeals found that this issue did not pass the threshold question and stated that Gaudina's equal protection argument "seems inapplicable and misplaced." *Gaudina*, slip op. at 16. We agree.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution demands that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." The guiding principle of the Equal Protection Clause is that similarly situated individuals should be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985); *Chiles v. State*, 254 Kan. 888, 895, 869 P.2d 707, *cert. denied* 513 U.S. 850 (1995). This constitutional guarantee does not require that all persons receive identical treatment, but only that persons similarly situated with respect to the legitimate purpose of the law receive like treatment.

With regard to classification, Gaudina compares his situation—involving resentencing under *Apprendi*—to a situation where a defendant began serving the postrelease portion of his or her sentence and then received jail time credit after being reincarcerated because of a violation of the terms and conditions of the postrelease supervision. As noted by the Court of Appeals, these two circumstances are distinctly different. This fact seems to be ignored by

Gaudina. It is well settled that, when circumstances differ, drawing distinctions under the KSGA does not violate the Equal Protection Clause. See *State v. Perez*, 269 Kan. 340, 343, 11 P.3d 52 (2000); see also *Adams v. State*, 27 Kan. App. 2d 292, 5 P.3d 1002, *rev. denied* 269 Kan. 931 (2000) (statutory classification allowing parolee who commits a felony, but not parolee returned to prison for technical parole violation, to convert indeterminate sentence to determinate sentence in conformance with KSGA was supported by rational basis); *State v. Standifer*, 24 Kan. App. 2d 441, 444, 946 P.2d 637, *rev. denied* 263 Kan. 890 (1997) (rejecting equal protection challenge based on differences between those whose crimes were committed before KSGA as compared to those who committed the same crimes after KSGA was enacted).

Gaudina was originally sentenced under "old law," *i.e.*, pre-*Apprendi*, and was resentenced in conformance with *Apprendi* and *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). He is being given equal treatment with all other offenders who would be subject to such resentencing and whose postrelease supervision periods are not subject to credit for time served in prison under the KSGA. Therefore, Gaudina's equal protection argument has no merit.

Affirmed.

JOHNSON, J., not participating.
LARSON, S.J., assigned.