NOT DESIGNATED FOR PUBLICATION

Nos. 119,128
119,129

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CRAIG J. SAMBER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed March 22, 2019. Dismissed in part, vacated in part, and remanded with directions.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE and POWELL, JJ.

PER CURIAM: Craig J. Samber appeals from the district court's determination of his criminal history score and from its order requiring him to reimburse the Board of Indigents' Defense Services (BIDS) for attorney fees without first considering his financial resources on the record. On appeal, Samber contends that the district court erred in classifying his prior Ohio conviction for attempted robbery (Ohio Rev. Code Ann. § 2911.02) as a person felony for criminal history purposes. Because Samber's criminal history score does not affect the time that he must serve on postrelease supervision, we

1

find this issue to be moot. Regarding his contention that the district court did not follow the statute in ordering the BIDS attorney fees, we find the court should have stated the factors it considered regarding Samber's financial condition and how those factors have been weighed in its decision as required by *State v. Robinson*, 281 Kan. 538, Syl. ¶ 1, 132 P.3d 934 (2006). We therefore vacate the BIDS fees assessment and remand this issue to the district court.

FACTS

On November 6, 2017, Samber pled guilty to one count of burglary of a motor vehicle, a severity level 9 person felony in case No. 17 CR 1006. On the same date, Samber pled guilty to one count of possession of methamphetamine, a severity level 5 drug grid felony in case No. 17 CR 1007. In exchange for his plea, the State agreed to dismiss all of the remaining charges in both cases. As part of the plea agreement, the district court consolidated the criminal cases, and the parties further agreed to recommend that the sentences in each case would run concurrent to one another.

Before sentencing, Samber objected to his criminal history score based on the classification of a 2007 Ohio attempted robbery conviction as a person felony. Samber also filed a motion seeking a downward dispositional or durational departure.

At the sentencing hearing, the court first considered Samber's objection to his criminal history score. After reviewing the Ohio journal entry, complaint, and indictment, the district court determined that the Ohio statute was divisible and "comparable enough" to the Kansas statute to be scored as a felony. See K.S.A. 2018 Supp. 21-6811(e). As a result, the district court calculated Samber's criminal history score as a B.

The State argued that the district court should deny Samber's request for a departure because of his criminal history and the fact that Samber was not likely to

2

succeed on probation. The court denied Samber's request for a dispositional departure to probation, but it granted his request for a durational departure. Although the recommended sentencing range for Samber was 32 to 36 months in prison, the court sentenced Samber to a controlling term of 20 months in prison followed by 12 months of postrelease supervision.

After announcing Samber's sentence, the district court ordered Samber to pay BIDS attorney fees, stating: "I'm going to assess a BIDS application fee of a hundred dollars. These cases were consolidated so the costs in both cases will be assessed in 17-CR-1007. I'm going to reduce the attorney fee—combining the cases as well as individually to $200 for attorney fees."

Samber filed timely notices of appeal in both cases, and this court consolidated the cases for appeal.

ANALYSIS

*Calculation of Criminal History Score*

Samber contends that the district court improperly classified his 2007 Ohio attempted robbery conviction as a person felony for criminal history purposes. Samber claims that his Ohio conviction should have been scored as a nonperson felony because the elements of the Ohio robbery statute are broader than the elements of the Kansas robbery statute. In support of this position, he cites *State v. Wetrich*, 307 Kan. 552, 561-62, 412 P.3d 984 (2018). In response, the State contends that this issue is moot because Samber has already served his prison sentence and is on postrelease supervision. We agree.

3

A review of the record reveals that Samber completed the prison portion of his 20-month sentence on August 10, 2018. The State subsequently filed a notice of change of custodial status under Supreme Court Rule 2.042 (2019 Kan. S. Ct. R. 18). At the time the notice was filed, Samber was on postrelease supervision that "will terminate sometime between February 10, 2019, and August 10, 2019." At this point, we do not know whether he is still on postrelease supervision. Regardless, we find the issue presented by Samber to be moot.

A claim is moot if "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.' [Citations omitted.]" *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014). Our role is to determine real controversies over the legal rights of persons and property that are actually involved in the particular case properly before the court and to adjudicate those rights so that the determination will be operative, final, and conclusive. *State v. Montgomery*, 295 Kan. 837, 840, 286 P.3d 866 (2012). We have unlimited review of the State's claim that the appeal is moot. *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012).

The prison portion of Samber's sentence is separate and distinct from the district court's order of postrelease supervision. Postrelease supervision is mandatory, and the length of postrelease supervision is determined by the severity level of the crime of conviction not the defendant's criminal history. See K.S.A. 2018 Supp. 22-3717(d)(1). As such, a defendant's criminal history score is not relevant in determining the length of his or her sentence. See K.S.A. 2018 Supp. 22-3717(d)(1)(A)-(C).

Here, the district court ordered Samber to serve 12 months of postrelease supervision based on the severity level of his primary crime. See K.S.A. 2018 Supp. 22-3717(d)(1)(C). A change to Samber's criminal history score would not affect the length of his postrelease supervision. In *State v. Gaudina*, 284 Kan. 354, 362-63, 160 P.3d 854

4

(2007), our Supreme Court has held that a defendant who is resentenced is not entitled to a credit against his or her period of postrelease supervision for the amount of time served in prison in excess of the prison time imposed at resentencing.

Numerous panels of this court have found similar challenges to defendants' criminal history scores moot when the defendants had completed the prison portion of their sentences and were on postrelease supervision. See, e.g., *State v. Barnes*, No. 117,457, 2018 WL 6580499, at *3-4 (Kan. App. 2018) (unpublished opinion); *State v. Gregory*, No. 113,207, 2017 WL 1104475, at *4-5 (Kan. App. 2017) (unpublished opinion); *State v. Terrell*, No. 115,145, 2017 WL 1035328, at *2-3 (Kan. App. 2017) (unpublished opinion); *State v. Reed*, No. 113,845, 2016 WL 2775148, at *1-2 (Kan. App. 2016) (unpublished opinion); *State v. Dunn*, No. 111,283, 2015 WL 2414362, at *2 (Kan. App. 2015) (unpublished opinion). We find the reasoning in these cases persuasive. Furthermore, we note that Samber makes no argument that an exception to the mootness rule should apply.

Samber claims his sentence is illegal, and K.S.A. 2018 Supp. 22-3504(1) provides that the court may correct an illegal sentence at any time. However, under K.S.A. 2018 Supp. 22-3504(1), the remedy for a corrected sentence is "full credit for time spent in custody under the sentence prior to correction." Here, Samber served the prison portion of his sentence and began serving his term of postrelease supervision upon his release. The term of postrelease supervision is controlled by K.S.A. 2018 Supp. 22-3717(d)(1)(C) and is not affected by his criminal history score. Rather, the Kansas Legislature set the term of postrelease supervision based on the severity level of the crime of conviction. So resentencing Samber with a different criminal history score would have no effect on the period of his postrelease supervision and there is no additional custodial time in prison against which to give him credit.

In addition, Samber asserts that even if his criminal history score was improperly calculated, he would rather not be resentenced due to his favorable downward durational departure. As such, Samber's position on this issue amounts to a request for an advisory opinion. If Samber's sentence was in fact illegal and the issue was not moot, resentencing would be the proper remedy. See K.S.A. 2018 Supp. 22-3504(1); *State v. Hankins*, 304 Kan. 226, 238-39, 372 P.3d 1124 (2016); *State v. Smith*, 56 Kan. App. 2d 343, 356, 430 P.3d 58 (2018). Under the circumstances presented here, however, resentencing would serve no purpose since Samber has completed his prison sentence. Accordingly, we dismiss this portion of Samber's appeal on the ground of mootness.

*Reimbursement of BIDS Attorney Fees*

Next, Samber contends that the district court failed to properly consider his financial resources and the nature of the burden that payment would impose when it ordered him to pay $200 as reimbursement of the BIDS attorney fees. In response, the State contends that Samber cannot raise this issue for the first time on appeal. In the alternative, the State suggests that Samber's claim is moot because the Kansas Prisoner Review Board would have made a similar inquiry in regards to the fees when it placed Samber on postrelease supervision. As yet another alternative, the State indicates that it is willing to waive the reimbursement of BIDS attorney fees.

Although Samber admits he did not challenge the imposition of attorney fees below, he asserts that we may review this issue because the claim involves only a question of law arising on proved or admitted facts and is determinative of the case. See *State v. Williams*, 299 Kan. 911, 929, 329 P.3d 400 (2014). We agree that review of the issue is appropriate. Thus, we will address this issue on the merits.

The assessment of attorney fees involves the interpretation of a statute, which is a question of law over which we exercise unlimited review. *State v. Hernandez*, 292 Kan.

598, 609, 257 P.3d 767 (2011). K.S.A. 22-4513(a) requires a defendant represented by appointed counsel and subsequently convicted to reimburse the State for expenditures made by BIDS to provide counsel and other services to the defendant. When assessing the amount and method of payment of these fees, the district court must consider "the financial resources of the defendant and the nature of the burden that payment of such sum will impose." K.S.A. 22-4513(b).

In *Robinson*, our Supreme Court held that when assessing the financial resources of a defendant and the nature of the burden that payment will have on him or her, the district court must explicitly consider those factors on the record. Moreover, the district court must state how those factors have been weighed in the court's decision. 281 Kan. at 546. If the district court finds that payment of the fees will impose a manifest hardship on the defendant or the defendant's immediate family, it may—at that point—waive payment of all or part of the fees or modify the method of payment. K.S.A. 22-4513(b).

Here, it seems clear from a review of the record that the district court took into consideration Samber's financial situation since it reduced the amount of BIDS attorney fees to a total of $200 for both cases. Unfortunately, the district court did not state on the record what factors it considered or the nature of the burden that payment of the fees would impose in reaching this decision. Consequently, under *Robinson*, we are obligated to remand this issue to the district court.

The State claims that this issue is also moot because the Kansas Prisoner Review Board would have taken into account the BIDS fees prior to placing Samber on postrelease supervision. See K.S.A. 2018 Supp. 22-3717(m)(5) ("In determining the amount and method of payment of such sum, the prisoner review board shall take account of the financial resources of the person and the nature of the burden that the payment of such sum will impose."). But the State fails to take into account the fact that this record does not contain proceedings by the prisoner review board, so we have no way to

7

determine whether the board complied with the mandate in K.S.A. 2018 Supp. 22-3717(m)(5). Thus, we do not have sufficient information on which to find that this issue is moot. See *Williams*, 298 Kan. at 1082 (An appeal should not be dismissed for mootness unless it is clearly and convincingly shown that the actual controversy has ended and the only judgment that could be entered would be ineffectual for any purpose.).

In a final attempt to make a remand unnecessary, the State graciously indicates a desire to waive the BIDS attorney fees. Although we appreciate this position, the State does not have the ability to waive BIDS fees. K.S.A. 22-4513 is a recoupment statute designed to reimburse State funds expended in a criminal defense. Any waiver of the BIDS fees must be approved by the district court. As a practical matter, the State is free to ask the district court to waive the assessment of attorney fees on remand and it seems highly unlikely that Samber would object. Nevertheless, in light of *Robinson*, we must vacate the BIDS attorney fees reimbursement portion of Samber's sentence and remand this issue to the district court.

Dismissed in part, vacated in part, and remanded with directions.