NOT DESIGNATED FOR PUBLICATION

No. 123,577

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARVIN M. NICKLES JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed June 10, 2022. Affirmed in part, sentences vacated, and case remanded with directions.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., GREEN and GARDNER, JJ.

PER CURIAM: Marvin M. Nickles Jr. appeals the denial of his motion to withdraw his no-contest pleas prior to sentencing for aggravated domestic battery in three cases consolidated for trial, resulting in the imposition of consecutive sentences for his three cases on the same day. Nickles argues (1) the district court abused its discretion in denying his presentence motion to withdraw his pleas and (2) his sentences are unconstitutional as applied. We are unpersuaded by Nickles' first argument. But we agree, based on recent decisions from our court, Nickles is correct that K.S.A. 2020 Supp. 21-6819(b)(4), as applied, violated his equal protection rights. Thus, we affirm the district

1

court's denial of Nickles' motion to withdrawal his pleas, but we vacate his sentences and remand for resentencing.

FACTS

Between June and August 2018, the State charged Nickles with multiple crimes in three separate cases. In the first case, the State charged Nickles with three counts of aggravated assault and one count each of stalking and aggravated domestic battery. The complaint was later amended to add charges of criminal threat and interference with law enforcement. In the second case, the State charged Nickels with aggravated domestic battery and two counts of criminal threat. In his third case, the State charged Nickles with kidnapping, aggravated domestic battery, and domestic battery.

Quentin Pittman was appointed to represent Nickles on the charges, and the cases were consolidated for trial over Nickles' objection. Around the same time, the district court suspended the proceedings to conduct a competency evaluation of Nickles. The district court later determined Nickles was competent and resumed the proceedings. Nickles and the State subsequently entered into a plea agreement addressing all three cases. Consistent with the plea agreement, on February 20, 2020, Nickles pled no contest to one count of aggravated domestic battery in each case. In exchange for his pleas, the State dismissed the remaining counts and agreed not to file charges in two other potential cases.

The following week, Nickles filed a pro se motion to withdraw his pleas. Nickles' motion claimed, among other things, that Pittman misled and coerced him into signing the plea agreement. Terry Beall was appointed to represent Nickles on his pro se motion to withdraw his pleas. Beall then also filed a motion to withdraw pleas, and a hearing was held on the motions.

2

At the hearing on Nickles' motions to withdraw his pleas, Pittman was the sole witness, and he testified about his actions leading up to Nickles ultimately entering his pleas. Pittman testified that either he or his investigator met with Nickles at the detention center on at least 10 occasions throughout Pittman's representation. Pittman stated that they intended to go to trial prior to receiving the plea offer because "[f]rankly, what [Nickles] wanted and what the State wanted was kind of far apart." Even so, Pittman testified he took the plea deal to Nickles and explained the plea deal to Nickles using his usual precautions, stating:

> "Well, the only precautions I took were what I would take with any client, which is when I met with [Nickles] I made sure he understood what the documents are, made sure that he had a grid, which I provided him, made sure he knew what the potential penalties were—and in this case it was fairly easy, which was three sevens—and made it very clear to him that it didn't matter to me what he did. What mattered was that he made an informed decision."

Pittman's testimony reflects, given the prior issues with competency, he "made a concerted effort to make sure that [Nickles] understood exactly what we were talking about."

Pittman could not remember the date he first took the written plea agreement to Nickles but testified he showed Nickles the written plea agreement four days before the plea was entered, and they discussed the plea offer for more than an hour. Even so, Pittman clarified Nickles was aware of the plea agreement's terms prior to the meeting:

> "So what [Nickles] and I had talked about, and I'd met him previously in the week, is [Nickles] understood that they'd made an offer to him and [Nickles] understood that there was a drop-dead date for that offer. So when I went to go talk to him the last time before we went to court, my question simply was is this—do you want to do this and what the pros and cons were."

Pittman went on to explain he spoke to Nickles about the plea agreement and Nickles "knew what the offer was. We went over it." And Pittman reiterated that Nickles was aware of the terms despite not having the written document because they had previously discussed it. But because Nickles was unsure if he wanted to accept the plea offer, Pittman did not have him sign the documents and suggested Nickles give him an answer when they met in court for the plea hearing. Nickles ultimately signed the plea agreement the morning of the plea hearing.

After arguments from the parties, in which Beall argued Nickles "felt rushed" and did not understand the plea agreement, the district court denied the motion. The district court concluded Pittman provided competent counsel and "the great weight of the evidence" showed Nickles was not misled, coerced, or threatened. The district court further found Nickles was not rushed into the decision and "[t]he facts are totally contrary to his allegations in his motion that it was within 24 hours of discussing it."

After the hearing, Pittman reviewed his files and determined the dates he visited Nickles. At the hearing, Pittman approximated meeting with Nickles to discuss the plea agreement on February 16, 2020. But upon reviewing his files, Pittman determined the conversation occurred two days later, on February 18, 2020. The parties stipulated to these facts. Based on the stipulation, Beall filed a second amended motion to withdraw Nickles' pleas. His motion alleged Pittman "did not explain to him his rights and the plea" on February 18, 2020, during the jail meeting.

The district court addressed the motion immediately prior to Nickles' sentencing. Nickles testified and claimed Pittman inaccurately informed him of his potential sentence. Making this claim for the first time while testifying, Nickles alleged Pittman told him the State's plea offer called for 60 months' imprisonment, "so that's why [he] signed the plea and went on to accept it." It was not until after Nickles "signed it and everything else" that Pittman informed Nickles that the plea agreement called for a 102-

4

month sentence. Nickles also testified that Pittman did not have the written plea agreement with him during the jail meeting and Nickles did not see the written agreement until he was brought in for the plea hearing.

Upon making its factual findings, the district court noted the discrepancies between the testimony of Pittman and Nickles and determined Pittman's testimony was more credible. Based on the evidence and its credibility determination, the district court denied Nickles' motion to withdraw his plea in all three cases. Even though the cases were consolidated for trial, the district court proceeded to sentence Nickles separately in each case. Based on Nickles' criminal history score of A and the severity level of his crimes of conviction—severity level 7 nondrug person felonies—the district court sentenced Nickles to 34 months' imprisonment for each conviction. The district court then ordered those sentences to run consecutive for a total controlling term of 102 months' imprisonment.

ANALYSIS

*The district court properly exercised its discretion in denying Nickles' motions to withdraw his pleas.*

Nickles first argues the district court abused its discretion in denying his motions to withdraw pleas because he did not knowingly enter his pleas and Pittman provided lackluster advocacy when he misinformed Nickles of his potential sentence under the plea agreement. The State contends the district court did not abuse its discretion because it found Pittman's testimony credible.

A district court may allow a defendant to withdraw a guilty or nolo contendere plea for good cause any time before sentencing. K.S.A. 2020 Supp. 22-3210(d)(1). Appellate courts review such decisions for an abuse of discretion, which occurs when a

district court's decision is arbitrary, fanciful, or unreasonable, or is based on an error of law or fact. *State v. Frazier*, 311 Kan. 378, 381, 461 P.3d 43 (2020).

When determining whether a defendant has demonstrated good cause to withdraw a plea, a district court generally looks to the following three factors from *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006): (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *Frazier*, 311 Kan. at 381. These factors should not "be applied mechanically and to the exclusion of other factors." *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court "should not ignore other factors that might exist in a particular case." *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016); see *Frazier*, 311 Kan. at 382 (applying contract principles to good-cause showing).

In showing good cause to withdraw a no-contest plea, the defendant is not required to show his counsel was unconstitutionally ineffective; rather, the defendant may rely on "'[m]erely lackluster advocacy'" to support good cause under the first *Edgar* factor. *Schaefer*, 305 Kan. at 589. And to the extent the lower court's exercise of discretion is informed by findings of fact, appellate courts will not reweigh evidence or reassess witness credibility. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

Although Nickles does not frame his issue under the *Edgar* factors, he seems to argue all three factors weigh in favor of allowing him to withdraw his pleas. But to reach this conclusion, Nickles exclusively argues Pittman "intentionally or unintentionally" misled him when Pittman advised him that his "criminal history score would only count against the first conviction, and he would be criminal history I on the two remaining counts. Had this advice been correct, under the plea agreement [Nickles] would have received a controlling sentence of 60 months."

6

Nickles fails to identify any new arguments not already considered by the district court in denying his motions. Instead, Nickles asks us to reweigh the same evidence presented to the district court and come to a different conclusion. He attempts to avoid directly asking us to reassess witness credibility by arguing "there was no credibility determination to be made because Mr. Pittman's testimony and Mr. Nickles' testimony did not conflict." He seems to suggest because his testimony was not directly contradictory to Pittman's, the district court's credibility determination was erroneous.

But Nickles' attempt to circumvent the district court's credibility determination is misguided. Nickles did not make any claim Pittman erroneously advised him of the potential sentence until he testified at the hearing on his second motion to withdraw his pleas. This claim was not asserted in any of his written motions to withdraw his pleas, and Nickles did not testify to or allege as much at the evidentiary hearing on his first motion. Nickles did not make this claim until after Pittman testified; thus, we find it unpersuasive he now contends Pittman's testimony did not contradict his own.

In any event, Nickles' argument regarding witness credibility narrowly points out specific allegations Pittman did not contradict. This argument is unpersuasive. If we were to take this approach, witness credibility findings would be improperly reassessed in any appeal wherein the witness did not directly contradict the testimony of another. Although the district court's credibility determination could have been clearer, its decision reflects it weighed the evidence and the credibility of testimony given by Nickles and Pittman in determining Nickles' plea was knowingly and voluntarily entered. The district court specifically found "there was no evidence of any kind of lackluster advocacy on the part of Mr. Pittman or incompetence for that matter," and it reiterated that it confirmed with Nickles he was understandably making the plea when it was entered.

Nickels' argument only challenges the district court's credibility determination— presumably because the district court's finding leaves little room for argument on appeal.

7

But his testimony, which the district court explicitly rejected, is the only evidence supporting his argument. Because Nickles does not advance any other arguments challenging the district court's denial of his motions to withdraw his pleas, he has not shown the district court abused its discretion. He fails to demonstrate that no reasonable person would agree with the district court or that its decision was based on an error of fact or law. See *DeAnda*, 307 Kan. at 503.

*K.S.A. 2020 Supp. 21-6819(b), as applied, violates Nickles' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.*

Nickles argues K.S.A. 2020 Supp. 22-6819(b)(4), as applied, violated his equal protection rights. Nickles acknowledges the issue was not raised below but asserts it can be considered for the first time on appeal because (1) "the newly asserted theory involves 'only a question of law arising on proved or admitted facts and the issue is finally determinative of the case'" and (2) consideration of the theory "'is necessary to serve the ends of justice or to prevent denial of fundamental rights.'" *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Although Nickles' cases were consolidated for trial, the district court sentenced him separately in each case. Nickles argues his equal protection rights were violated because the district court treated him differently from criminal defendants sentenced for multiple convictions based on charges in a single charging document. We agree.

The Equal Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In other words, the crux of the Equal Protection Clause is that "all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985); *State v. Gaudina*, 284 Kan. 354, 372, 160 P.3d 854 (2007). However, the United States

8

Constitution "does not require that all persons receive identical treatment, but only that persons similarly situated with respect to the legitimate purpose of the law receive like treatment." 284 Kan. at 372.

Nickles relies heavily on *State v. Dixon*, 60 Kan. App. 2d 100, 492 P.3d 455, *rev. denied* 314 Kan. 856 (2021), to support his equal protection violation claim. The State asserts *Dixon* was incorrectly decided, both in reaching the issue despite a lack of preservation and in finding K.S.A. 2020 Supp. 22-6819(b)(4), as applied, violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The *Dixon* panel held K.S.A. 2020 Supp. 21-6819(b)(4), the sentencing provision commonly known as the "double rule," violated Dixon's equal protection rights because the statute treated arguably indistinguishable classes of defendants differently and the statute did not pass rational basis scrutiny. 60 Kan. App. 2d at 134, 138. The *Dixon* panel found that K.S.A. 2020 Supp. 21-6819(b)(4) creates two classes of similarly situated individuals who are treated differently: "(1) defendants who had one trial on multiple counts charged in one charging document and (2) defendants who had one trial on multiple counts charged in separate charging documents consolidated for trial based on a finding that the charges *could have* been brought in one charging document." 60 Kan. App. 2d at 133-34. The only real difference between the two classes of defendants was the number of cases in which the charges are filed. 60 Kan. App. 2d at 134. The panel concluded there was no rational basis justifying this disparate treatment. 60 Kan. App. 2d at 139.

We find *Dixon* well-reasoned and persuasive and apply the same reasoning here. We note two other panels of our court have adopted the reasoning in *Dixon*. See *State v. Myers*, 62 Kan. App. 2d 149, 184-92, 2022 WL 1052077, at *22-27 (No. 123,439, filed April 8, 2022), *petition for rev. filed* April 29, 2022; *State v. Fitzgerald*, No. 123,121, 2022 WL 815839, at *4-6 (Kan. App. 2022) (unpublished opinion), *petition for rev. filed*

9

March 28, 2022. Like the *Fitzgerald* panel, we are unpersuaded by the State's arguments against *Dixon*. See *Fitzgerald*, 2022 WL 815839, at *4. The State made a similar argument in *Myers*, suggesting Myers was really challenging the prosecutorial discretion as his case could have been tried separately because his cases were not subject to compulsory joinder. We are unpersuaded by the State's argument in *Myers* as well. We agree with the prior panels and find Nickles can raise this issue for the first time on appeal based on the preservation exceptions argued in his brief. See *Myers*, 62 Kan. App. 2d at 182, 2022 WL 1052077, at *21; *Dixon*, 60 Kan. App. 2d at 131-32; *Fitzgerald*, 2022 WL 815839, at *4.

Like the defendants in *Dixon, Myers*, and *Fitzgerald*, Nickles was charged with multiple crimes in multiple cases, the cases were consolidated before trial, and Nickles was convicted of multiple crimes. In a "multiple conviction" case, the district court may impose concurrent or consecutive sentences subject to certain rules. See K.S.A. 2020 Supp. 21-6819(b). The district court must establish a "base sentence" for the primary crime—the crime with the highest severity level. K.S.A. 2020 Supp. 21-6819(b)(2). The base sentence is calculated by applying the defendant's full criminal history score to the primary crime. K.S.A. 2020 Supp. 21-6819(b)(3). But the "[n]onbase sentences"—the defendant's sentences for the remaining convictions—are calculated using a criminal history score of I. K.S.A. 2020 Supp. 21-6819(b)(5). "The total prison sentence imposed in a case involving multiple convictions arising from multiple counts within an information, complaint or indictment cannot exceed twice the base sentence." K.S.A. 2020 Supp. 21-6819(b)(4).

Here, the district court sentenced Nickles to 3 consecutive 34-month terms of imprisonment for a total controlling sentence of 102 months. Had Nickles been charged in a single complaint, his maximum sentence would have been 68 months—twice the base sentence of 34 months. See K.S.A. 2020 Supp. 21-6819(b)(4). Because the district court found each of Nickles' cases could have been brought in one charging document

and consolidated those cases pursuant to K.S.A. 22-3203 and K.S.A. 22-3202(1), the district court's failure to apply the double rule in K.S.A. 2020 Supp. 21-6819(b)(4) to the overall felony sentences violated Nickles' right under the Equal Protection Clause.

We agree with the prior panels of our court the proper remedy is to vacate Nickels' sentences and remand for resentencing so he can receive the benefit of the double rule—he cannot be sentenced to a total controlling term of more than twice the base sentence. See *Myers*, 62 Kan. App. 2d at 193, 2022 WL 1052077, at *27; *Dixon*, 60 Kan. App. 2d at 140-41; *Fitzgerald*, 2022 WL 815839, at *7.

Affirmed in part, sentences vacated, and case remanded with directions.