IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,726

STATE OF KANSAS,
*Appellee*,

v.

PETTIX MCMILLAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

Sentences in a multiple count case fail to conform to applicable statutory provisions and are illegal when the judge fails to identify the primary count, to assign sentences to each count, and to identify criminal history scores on each count and the record makes it impossible to otherwise determine the sentences the judge imposed. Under those circumstances, an appellate court may vacate all sentences and remand for resentencing on all counts.

2.

In a case involving a multiple count sentence, if an appellate court holds the sentences are illegal and vacates all sentences and thus new sentences need to be imposed, the revised Kansas Sentencing Guidelines Act, K.S.A. 21-6801 et seq., opens the door to consideration of departure issues the defendant may raise and the resentencing judge has jurisdiction to consider those issues.

1

3.

On a remand for resentencing on all counts, a district court has jurisdiction to consider a departure motion unless a mandate explicitly states otherwise, or it is determined consideration is otherwise precluded.

Review of the judgment of the Court of Appeals in an unpublished opinion filed January 13, 2023. Appeal from Sedgwick District Court; KEVIN J. O'CONNOR, judge. Oral argument held September 14, 2023. Opinion filed August 9, 2024. Judgment of the Court of Appeals vacating the judgment of the district court is affirmed in part and reversed in part. Judgment of the district court is vacated, and the case is remanded with directions.

*Ryan J. Eddinger,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were with him on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  After a jury convicted Pettix McMillan of three counts of attempted first-degree murder, he filed three direct appeals attacking the legality of his convictions or his sentences. In his second appeal, a Court of Appeals panel vacated his sentences on all counts and remanded his case to the district court for resentencing. See *State v. McMillan*, No. 115,229, 2021 WL 642297 (Kan. App.) (unpublished opinion) (*McMillan II*), *rev. denied* 313 Kan. 1044 (2021). On remand, McMillan received a new sentence and appealed again. The *McMillan III* panel disagreed with the *McMillan II* panel's decision to vacate all counts. It held the resentencing judge lacked authority to impose a new sentence on two counts the *McMillan* II panel had vacated because McMillan had received a legal sentence on those counts. It also held that the resentencing

2

judge erred by not considering McMillan's departure motion. *State v. McMillan*, No. 124,276, 2023 WL 176653 (Kan. App. 2023) (unpublished opinion) (*McMillan III*).

On review of that decision, we hold McMillan's entire original sentence was illegal and thus the *McMillan II* panel correctly vacated all sentences and the *McMillan III* panel erred when it concluded the second sentencing judge had authority to impose a sentence on only one count. We also conclude, in agreement with the *McMillan III* panel, that the second sentencing judge should have considered McMillan's departure motion when conducting the resentencing. We thus remand for a third sentencing hearing.

FACTS AND PROCEDURAL BACKGROUND

McMillan's three convictions arise out of a single incident in which McMillan shot members of his family. Each count involved McMillan shooting a different family member: count one, his then-wife; count two, his then 13-year-old son; and count three, his then 5-year-old son. The State charged McMillan with three counts of attempted first-degree murder, a severity level 1 person felony.

Before trial, the State notified McMillan it intended to ask for upward durational departure sentences on counts two and three—the charges relating to his sons. At trial, the jury determined the State had proved two aggravating sentencing factors beyond a reasonable doubt: (1) each child victim was particularly vulnerable due to his age, and McMillan knew the children's ages, and (2) McMillan owed a fiduciary responsibility to each child victim.

Post-trial, McMillan filed a motion asking for a downward departure from the presumptive sentences. He argued several mitigating factors offset the aggravating factors found by the jury.

3

During arguments by the attorneys about the appropriate sentence, the prosecutor asked the judge to impose an upward departure sentence for a total of 1,068 months. Defense counsel argued the downward departure factors offset the aggravating factors found by the jury.

After hearing arguments, the sentencing judge denied McMillan's downward departure motion. He described McMillan's offenses as "terrible" and added that "[i]t is very lucky that no one was killed." When addressing the fact that McMillan shot his five-year-old son, the judge called the act "horrible" and noted the child required multiple surgeries. The judge concluded there was no substantial and compelling reason to depart downward. Instead, the judge held that the aggravating factors found by the jury warranted granting the upward durational departure requested by the State. The judge found the State had met its burden of establishing McMillan's criminal history, which scored as category D.

The judge then asked the prosecutor several questions about sentencing rules, confirmed that the State was relying on the aggravating factors found by the jury, and asked the prosecutor for the State's recommendation on each count. The prosecutor started to answer but was cut off before completing the explanation. During the answer, the prosecutor referred to doubling count one and then doubling it again. As the answer continued the prosecutor referred to all counts and said, "You would give a sentence of the aggravated number on each count and then pronounce the doubling after you find—." It was at this point, before the prosecutor had fully laid out the findings the judge needed to make, that the judge interrupted and stated, "Okay. And that will be the Order of the court for a total sentence of 1,068 months." The judge provided no other explanation of the sentence.

The journal entry reflected consecutive, upward departures on each count. Count one was shown as the primary count with a prison sentence of 534 months, which is

4

double the aggravated presumptive sentence of 267 in the revised Kansas Sentencing Guidelines Act (KSGA) grid box for a level 1, criminal history D conviction. The journal entry showed that counts two and three ran consecutive to count one and to each other, and it recorded a 330-month sentence of imprisonment on both; 330 months is double the aggravated presumptive sentence of 165 months in the KSGA grid box for a level 1, criminal history I conviction. See K.S.A. 2013 Supp. 21-6804 (sentencing grid at time crimes committed).

McMillan I *and Remand Proceedings that Followed*

McMillan appealed, arguing he had been denied his statutory right to a speedy trial and his constitutional right to appear personally at all critical stages of the case. McMillan did not seek appellate review of his sentence or of the judge's decision to deny his departure motion. The Court of Appeals affirmed McMillan's convictions. *State v. McMillan*, No. 115,229, 2017 WL 3447000 (Kan. App. 2017) (unpublished opinion) (*McMillan I*), *summarily rev'd and remanded* by unpublished order (Kan. 2018).

McMillan sought review, and this court granted his request. This court summarily reviewed the panel's decision, and remanded McMillan's appeal to the Court of Appeals with directions to consider a then-recent decision of this court about the right to be present during critical stages of a trial. In turn, the Court of Appeals remanded the case to the district court for an evidentiary hearing and factual findings. After conducting these proceedings, the district court ruled against McMillan.

McMillan II *and Remand Proceedings that Followed*

McMillan appealed again. He renewed his argument that the district court violated his statutory speedy trial rights and erred in denying him relief for a violation of his constitutional right to be present at a critical stage of his trial. He also raised a new

5

argument, contending for the first time in any court that his sentence was illegal because an aggregate sentence of 1,068 months of imprisonment exceeded the statutory maximum sentence. *McMillan II*, 2021 WL 642297, at *1.

A Court of Appeals panel first considered the district court's rulings that McMillan suffered no violation of his constitutional right to be present at critical stages of the trial proceedings or his speedy trial right. The panel agreed with the district court's conclusions, and it affirmed McMillan's convictions. 2021 WL 642297, at *5-7. At that point, this issue essentially became settled and has not resurfaced in later proceedings.

The panel then considered the issue still being disputed: McMillan's newly raised challenge about the legality of his sentence. The State conceded that McMillan's sentence exceeded the length allowed under the KSGA, and the *McMillan II* panel agreed "the aggregate prison term of 1,068 months exceeds the statutory maximum and must be set aside." 2021 WL 642297, at *7. The panel added that "the district court clearly intended to impose the longest term of imprisonment permitted under the guidelines," which the panel determined was 1,029 months. The panel concluded: "We, therefore, vacate McMillan's sentences and remand to the district court for resentencing." 2021 WL 642297, at *8. It also directed the district court to "resentence McMillan consistent with this opinion." 2021 WL 642297, at *8.

On remand to the district court, McMillan moved again for a downward durational departure sentence. He renewed the arguments he had made during the original sentencing hearing and offered the new mitigating factors of his productive behavior and good disciplinary record while incarcerated.

At the resentencing hearing, the judge and the attorneys discussed the *McMillan II* decision. Each agreed that the original sentences on all counts were vacated and new sentences needed to be imposed on each count. The prosecutor cited *State v. Jamerson*,

6

309 Kan. 211, 433 P.3d 698 (2019), and explained that it "basically says what the Court just said on the record which is when one or more of the sentences in a multi-conviction case is illegal, District Courts may only correct the illegal sentence." The State then addressed all three counts, stating it understood that all the original sentences were illegal, and asked the resentencing judge to designate either count two or three as the primary count and to double the sentences for both counts. McMillan's counsel also recognized that *McMillan II* could be read to hold that the error made at the original sentencing "is inextricably bound between counts, we are back here with an instruction[] that there is currently no sentence. There is a conviction but no sentence imposed at this time and it must be corrected as a whole." McMillan's counsel then asked the judge to also consider the downward departure motion.

The judge stated he did not think he had jurisdiction to consider the departure motion. Turning to the sentencing, the judge observed that "even the Court of Appeals did not consider the primary offense to be Count 1." The judge then designated count two as the primary count, found McMillan had a criminal history of D that applied to the primary count, and doubled the aggravated presumptive grid box sentence. Applying a criminal history of I to the other counts, the judge doubled the sentence for count three but did not double the sentence for count one and ran the sentences consecutive to each other for a total term of 1,029 months.

McMillan III

McMillan appealed for the third time, arguing the district court had jurisdiction to consider his departure motion and erred in not doing so. *McMillan III*, 2023 WL 176653, at *1. A Court of Appeals panel of different judges raised a new issue and ordered supplemental briefing "'on the question of whether the district court had authority to modify McMillan's sentence on count two in resentencing him.'" 2023 WL 176653, at *6.

After reviewing the supplemental briefing, the panel held the original sentencing judge had imposed an illegal sentence on count one only. The panel focused on the journal entry of judgment and remarks by the prosecutor during the original sentencing hearing about how to structure the sentence. It then concluded the original judge had intended for count one to be the primary count, even if he did not orally designate the primary or base count. But it agreed with McMillan that no upward departure factors applied to count one, so the upward durational departure imposed by the sentencing judge made McMillan's sentence illegal as to count one. The panel also held the sentencing judge had imposed legal sentences on counts two and three and those sentences could not be changed. 2023 WL 176653, at *10.

The panel remanded for a third sentencing hearing and directed "that the district court must designate count one as the primary offense and impose consecutive sentences of 330 months on counts two and three." 2023 WL 176653, at *13. The panel added that if the district court decided in the exercise of its discretion "to again impose the maximum presumptive sentence of 267 months on count one, [McMillan's] maximum controlling sentence would be limited to twice that figure: 534 months." 2023 WL 176653, at *13.

The State timely sought review. We have jurisdiction under K.S.A. 20-3018(b) (allowing jurisdiction over petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions on petition for review).

ANALYSIS

In the State's petition for review, it argues the *McMillan III* Court of Appeals panel erred by holding the resentencing judge could not modify McMillan's sentence on count two and by holding the resentencing judge could not designate count two as the primary

8

count. It also argues the panel erred by holding the resentencing judge should have considered McMillan's departure motion on remand.

We agree with the State's arguments that the panel erred in concluding the resentencing judge could not designate count two as the primary count and impose a new sentence. But we reject its arguments about the departure motion.

ISSUE 1: *The resentencing judge did not err in resentencing McMillan on count two.*

We will first address the issue the *McMillan III* panel raised and asked the parties to brief: Did the resentencing judge have authority to modify McMillan's sentence on count two? As revealed in our factual summary of the resentencing hearing, the resentencing judge understood he had a mandate to do so, as did the parties. The *McMillan II* decision stated as much because the panel explicitly vacated the "sentences," which meant, as defense counsel stated, there was no sentence when the resentencing judge started the resentencing hearing. The question is thus better phrased as whether the *McMillan II* panel correctly vacated the sentence on count two.

To resolve that question, we must look to Kansas statutes because, as this court has stated, courts have "no authority to modify a sentence unless plain statutory language provides such authority." *State v. Guder*, 293 Kan. 763, 766, 267 P.3d 751 (2012). Both the KSGA and the illegal sentence statute, K.S.A. 22-3504, address when courts have such authority.

The KSGA states that "the appellate court shall not review: (1) Any sentence that is within the presumptive sentence for the crime." K.S.A. 21-6820(c)(1). Ultimately, the *McMillan III* decision that the resentencing judge could not impose a new sentence on count two rests on this statute. But our statutes also empower courts to correct an illegal sentence, which is one that, among other things, "does not conform to the applicable

9

statutory provision, either in character or punishment[] or that is ambiguous with respect to the time and manner in which it is to be served at the time it is pronounced." K.S.A. 22-3504(c)(1). Thus, while many presumptive sentences must evade appellate review, appellate courts may review even a presumptive sentence if some aspect of it is illegal under another sentencing statute or is ambiguous as to time and manner of service. See *State v. Steinert*, 317 Kan. 342, 529 P.3d 778 (2023) (remanding to district court for determination of whether presumptive sentence was illegal due to questions about criminal history score).

The question of whether the resentencing judge had authority to resentence on count two (or whether the *McMillan II* court erred in vacating the sentence on count two) puts us in the unusual situation of, in effect, reviewing a Court of Appeals decision that is not technically before us. But we must do so to determine whether the resentencing judge imposed legal sentences. The determination of whether McMillan's sentences were illegal requires interpreting KSGA sentencing requirements and presents a question of law subject to our unlimited review. *State v. Newman-Caddell*, 317 Kan. 251, 258-59, 527 P.3d 911 (2023).

*Undisputedly, Some Aspects of the Original Sentence Were Illegal*

One aspect of the analysis about whether McMillan's original sentences conformed to applicable statutes is straightforward and clear. That clarity is revealed by the parties' agreement that the original journal entry recorded a departure sentence for count one relating to the shooting of McMillan's then-wife and that the departure was illegal because it did not conform to applicable statutory provisions. As the parties agree, K.S.A. 21-6815(a) allows a departure only when substantial and compelling reasons support a departure factor. The jury verdict established substantial and compelling reasons on the counts arising from McMillan shooting his sons—counts two and three—but provided no basis for a departure on the count relating to his then-wife—count one. Thus, no legal

10

basis existed for a departure sentence on count one. The *McMillan II* panel appropriately vacated that count, and the *McMillan III* panel likewise did not err in recognizing the illegality of the original sentence on count one. *McMillan III*, 2023 WL 176653, at *10; *McMillan II*, 2021 WL 642297, at *8; see K.S.A. 21-6820(d) (allowing appeal of departure sentence based on claim departure was not supported by evidence and did not constitute a substantial and compelling reason for departure).

The parties also agree that the total sentence of 1,068 months announced at the first sentencing was illegal. In *McMillan II*, this was the focus of the appeal and was undisputed. But then the *McMillan III* panel raised the more nuanced question of whether the discrete sentence on count two was legal. In other words, did the *McMillan II* panel err when it vacated the sentence on count two?

*We Cannot Discern the Original Sentences on Individual Counts*

The *McMillan III* panel's discussion of count two in isolation from counts one and three rests on the concept that each count must be considered discreetly when analyzing whether the sentence is illegal. This discrete consideration flows from the provisions of the KSGA that alter previous law. Before the KSGA was adopted, sentences for multiple counts "were regarded as a singular entity that could not be subdivided into correct and incorrect counts. So remand for resentencing on one count allowed all counts to be resentenced as the courts saw fit." *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018). But this court held that the KSGA changed the common-law rule. *Guder*, 293 Kan. at 766-67. As we would later state, the holding in *Guder* stands for the principle that the KSGA "bars the district court from resentencing on any nonvacated counts." *Warren*, 307 Kan. at 609. That statement taken on its face would mean the resentencing judge had jurisdiction because all sentences had been vacated. But we recognize the tension between that statement and the combination of K.S.A. 21-6820(c)(1), which does not allow review of presumptive sentences, and recognition that an appellate court may

11

vacate only illegal sentences when acting under the jurisdiction conferred by the illegal sentencing statute. Likewise, the resentencing district court judge does not have "authority to resentence anew for all of the convictions" and may only resentence for the illegal sentences. *Jamerson*, 309 Kan. at 216.

The *McMillan II* panel did not explain why any individual count's sentence might be illegal, focusing on the illegality of the total controlling sentence. But it correctly determined that the total sentence exceeded the maximum allowed by law. See *McMillan II*, 2021 WL 642297, at *8; see also K.S.A. 2013 Supp. 21-6819(b)(1), (4). Even so, it may not have been necessary to vacate the sentences on all three counts to fix the illegality identified in *McMillan II* if indeed that were the only illegality. But the State contends the original sentencing judge made more errors than just setting the overall total beyond the maximum allowed.

On appeal, the State emphasizes that the judge did not designate a primary count, the criminal history applied to the individual counts, or the prison term of each sentence. In this sense, the State argues both that the sentence was ambiguous as to time and place and failed to conform to applicable statutes. It also initially argued that the original sentencing judge implicitly designated count two as the primary count by referring at one point to the first departure count.

The *McMillan III* panel rejected the argument that the sentence was ambiguous as to time and place, concluding the time and place was clear: 1,068 months and prison. 2023 WL 176653, at *13. It also rejected the State's argument that the sentencing judge implicitly designated count two as the primary count. The State does not counter those rulings before us. But it does continue to point out that the original sentences failed to comply with many KSGA provisions. And it argues the *McMillan III* panel erred when it concluded the original sentencing judge implicitly designated count one as the primary count and in holding the judge thus imposed lawful sentences on counts two and three

12

that were not subject to modification on remand. See 2023 WL 176653, at *10-13. It now contends that we cannot discern the individual sentences on any count. McMillan disagrees and asks us to affirm the Court of Appeals decision.

Sorting out whether the sentencing judge designated a primary count and what he intended as the sentence on each count requires both an examination of the record and of statutory requirements in the KSGA for imposing a sentence. We start by summarizing the statutory scheme to provide the framework for our discussion of the record.

The KSGA provides direction in multiple conviction cases like this one. In such cases, "the sentencing judge shall establish a base sentence for the primary crime." K.S.A. 21-6819(b)(2). The KSGA builds the sentence for the remaining counts on that base. "The primary crime is the crime with the highest crime severity ranking" except when, as here, multiple counts have the same crime severity ranking. In that circumstance, the statute directs "the sentencing judge [to] designate which crime will serve as the primary crime." K.S.A. 21-6819(b)(2). The criminal history applied to each count varies depending on whether the count is the base or nonbase count. See K.S.A. 21-6819(b)(5) ("Nonbase sentences shall not have criminal history scores applied, as calculated in the criminal history I column of the grid, but base sentences shall have the full criminal history score assigned."). And the base count sets the cap on the ultimate length of a consecutive sentence. See K.S.A. 21-6819(b)(4) (capping aggregate term at double the base sentence no matter how many convictions or the individual sentences imposed for each conviction). Here, the transcript raises questions about how the sentencing judge applied these rules.

Our review of the transcript of the original sentencing hearing confirms that neither the original sentencing judge nor the prosecutor explicitly designated a primary count. The only place we find the word "primary" in the transcript of the original sentencing is when the judge observed that "when there are multiple counts the most

13

someone can be sentenced to is double the high number in the first primary count." The prosecutor agreed, and the judge added, "And that happens to come to 534 months," which would be double the aggravated number in the grid box representing the intersection of a level one severity felony and a criminal history of D.

The *McMillan III* panel concluded that even without an explicit designation it could tell the primary count was count one. It based this on two things: statements made by the prosecutor and the journal entry. The panel quoted an exchange in which the original sentencing court asked the prosecutor how it would allocate the 1,068-month sentence it had requested between the three counts. The State responded it would "doubl[e] Count I and then you are permitted, under [K.S.A. 21-]6818, to then double that number. You would give a sentence of the aggravated number on each count and then pronounce the doubling after you find—." The judge interrupted and said: "Okay. And that will be the Order of the Court for a total sentence of 1,068 months." The *McMillan III* panel also noted another statement by the prosecutor requesting the judge sentence McMillan to 267 months on count one and 165 months on counts two and three, run the counts consecutive, and depart up to a controlling sentence of 1,068 months. "These statements, taken together, implied that the district court imposed a sentence of 534 months on count one and 330 months on counts two and three, as these sentences represent double the aggravated number on each count." 2023 WL 176653, at *12. Those sentences align with the journal entry, which designated count one as the primary count.

The panel noted the general rule is that once a count is legally designated as the primary count it remains the primary count, even on resentencing and even if the designation were unintended. For support, it cited the unpublished Court of Appeals decision of *State v. Hayden*, No. 118,506, 449 P.3d 445 (2019) (Kan. App. 2019) (unpublished opinion) (*Hayden II*). McMillan had cited *Hayden II* as persuasive authority arguing it presents a factual situation comparable to the one here because in *Hayden II* the sentencing judge designated a nondeparture count as the primary offense and departed

on that count only. The appellate court ruled the departure was illegal but the count, once designated as primary, remained the primary offense. See *McMillan III*, 2023 WL 176653, at *9-10.

The situation reviewed in *Hayden II* differs from McMillan's situation in several significant ways, however. Unlike the facts of *Hayden II*, McMillan's first sentencing judge did not pronounce the primary or base count (nor did the prosecutor in those explicit terms), did not specify what criminal history applied to each count, and did not pronounce the sentence as to each count. The individual sentences in *Hayden II* were thus crystal clear as compared to the situation in *McMillan* where they are unknown and where the prosecutor and judge made many inconsistent and ambiguous statements causing a lack of clarity not present in *Hayden II*, 449 P.3d at 450.

The *McMillan III* panel acknowledged the lack of clarity in the record of McMillan's original sentencing hearing. But it relied on *State v. Finley*, 18 Kan. App. 2d 419, 422, 854 P.2d 315 (1993), to conclude the record was sufficient to determine that count one was the primary count. *McMillan III*, 2023 WL 176653, at *12. In *Finley*, the defendant pleaded no contest to three counts of attempted terroristic threat. The maximum presumptive sentence for each count was one year of imprisonment or, in the defendant's situation, detention in the state security hospital. The district court ordered a period of detention "'not exceed[ing] three years.'" 18 Kan. App. 2d at 420. On appeal, the parties agreed the court apparently imposed the maximum sentence on each count. But the defendant cited K.S.A. 21-6606(a) to argue the court must modify the journal entry to show concurrent sentences because under that statute "[w]henever the record is silent as to the manner in which two or more sentences imposed at the same time shall be served, they shall be served concurrently." The *Finley* panel rejected the defendant's argument after concluding the order for consecutive sentences could be implied for the overall period of detention. 18 Kan. App. 2d at 422.

15

The *McMillan III* panel found similarities and distinctions with *Finley*. 2023 WL 176653, at *12. Addressing the similarities, the *McMillan III* panel observed that neither the *Finley* sentencing judge nor the judge who originally sentenced McMillan announced the length of the individual sentences or whether they were to be served consecutively. Even so, according to the panel, in both cases, the total controlling sentence implied the terms of the individual sentences. The panel reasoned: "Based on the district court's pronounced sentence of 1,068 months, it was implied that the district court had imposed upward departure sentences on all three counts and ran the counts consecutively." 2023 WL 176653, at *12. Turning to the differences, the panel noted that McMillan's overall sentence of 1,068 months did not imply the specific length of each sentence, requiring it to rely on the individual sentences for each count that the prosecutor "seemed" to suggest. 2023 WL 176653, at *12. Despite these differences, the *McMillan III* panel found sufficient clarity in the State's suggested sentences to discern the sentences.

The *McMillan III* panel's conclusion ignores that neither the judge nor the State explicitly designated a primary count in their remarks. Granted, the State proposed a sentence for count one consistent with it being the primary count. But many statements throughout the hearing convey the State intended the primary count to be one of the counts relating to McMillan's sons. And the only comment by the judge about a primary count conveys he understood the departure facts applied to the counts relating to McMillan's sons only. Thus, when the transcript is read as a whole, neither the prosecutor's arguments nor the judge's pronouncement clearly designate the primary count. Plus, the contradictory statements make it unclear what the State meant, much less what the judge intended. We have a void in place of the necessary finding about which count is the primary. That void is significant because that designation forms the foundation for a KSGA sentence in a multiple count case. See K.S.A. 21-6819(b)(2).

This is not a unique situation, and appellate courts have sometimes filled the gap by looking at the journal entry. That is what the *McMillan III* panel did as well. In doing

16

so, the panel recognized the general rule that a sentence "is effective upon its pronouncement from the bench; the filing of a formal journal entry is but a record, evidence of what has been done. The court's order does not derive its effectiveness from the journal entry, or from any act of the clerk; it is effective when announced." *State v. Moses*, 227 Kan. 400, 402-03, 607 P.2d 477 (1980). A corollary to this rule is that the journal entry is intended to enshrine the pronounced sentence, not correct any errors or omissions made during its pronouncement. See *State v. Hilt*, 307 Kan. 112, 127-28, 406 P.3d 905 (2017).

On the other hand, we have recognized that a district court retains jurisdiction to file a journal entry of sentencing that clarifies an ambiguous sentence pronounced from the bench. The *McMillan III* panel relied on this line of cases, citing *State v. Jackson*, 291 Kan. 34, 36, 238 P.3d 246 (2010); *State v. Garcia*, 288 Kan. 761, 765-67, 207 P.3d 251 (2009); and *State v. Crawford*, 253 Kan. 629, 649-50, 861 P.2d 791 (1993), *abrogated on other grounds by State v. Marinelli*, 307 Kan. 768, 415 P.3d 405 (2018). 2023 WL 176653, at *10. It then concluded the journal entry clarified the original sentencing judge's intent to use count one in the complaint as the primary count and to impose consecutive sentences.

In reaching this conclusion, the *McMillan III* panel recognized that it needed to examine whether there is an "actual variance between what occurred at the hearing and what is reflected in the journal entry memorializing the hearing." 2023 WL 176653, at *11. The panel thus looked to the transcript to provide that clarification, emphasizing that "the State clearly requested that the district court designate count one as the primary offense" and, "[i]n describing how it believed McMillan should be sentenced, the State repeatedly suggested that count one should operate as the primary offense." 2023 WL 176653, at *11. But we again note that in the portion of the transcript relied on by the *McMillan III* panel, the judge interrupted the prosecutor midsentence as she was saying

17

you should "pronounce the doubling after you find—." It is those missing findings that are key.

Also, while portions of the transcript read in isolation arguably support the *McMillan III* panel's reading other portions suggest, as the *McMillan II* panel concluded, that the judge intended for McMillan to "properly receive[] a 534-month sentence on the primary crime (one of the convictions on which the jury found aggravating circumstances)." 2021 WL 642297, at \*8. Our reading of the transcript leads us to conclude this reading is as reasonable as the *McMillan III* panel's reading. We thus cannot conclude on this record that the journal entry clarified the judge's orders.

We find more support for our conclusion in inconsistent statements found in the journal entry itself. In the departure section, the journal entry cites the two reasons found by the jury as departure factors applying to "two of the victims." It identified those victims as McMillan's two sons. To this extent, the journal entry provides no basis for the departure on count one and is, at best, ambiguous rather than clarifying and, at worst, internally inconsistent. This leads us to conclude that the lack of clarity and the ambiguity in the statements of both counsel and the judge leave no room for confidence that the journal entry clarified—rather than modified—the judge's order about which was the primary count.

*Vacating All Counts Was Appropriate*

In sum, the overall original sentence and its component sentences violated KSGA provisions and thus were illegal, and the *McMillan II* panel properly vacated all sentences. The overall illegality of the sentence derives chiefly from the judge's failure to explicitly assign sentences to each count and to identify the primary count, making it impossible to definitively say what sentences the judge imposed or to hold that the journal entry clarified rather than modified the sentence. This situation distinguishes this

18

case from *Abasolo*, *Jackson*, and *Garcia*. Cf. *Abasolo v. State*, 284 Kan. 299, 306, 160 P.3d 471 (2007) (stressing that judge's statements in probation revocation hearing were unambiguous and consistent with statutes and thus controlled over journal entry); *Jackson*, 291 Kan. at 36-37 (district court clarified the sentence pronounced); *Garcia*, 288 Kan. at 765-66 (clarification not modification occurred). We cannot conclude which count was the primary count, and, if it was count two, the sentence reflected in the journal entry is an illegal sentence because it uses the wrong criminal history score. See K.S.A. 21-6819(b)(5).

The *McMillan III* panel erred in concluding the sentencing court designated a primary count and in concluding count two was not illegal and not subject to resentencing on remand. We reverse this portion of the *McMillan III* opinion.

ISSUE 2: *The district court on remand must consider McMillan's departure motion.*

In its petition for review, the State also argues the resentencing judge lacked jurisdiction on remand to consider McMillan's departure sentence or, in the alternative, that the mandate rule prevented the resentencing judge from considering McMillan's downward departure motion. These arguments present questions of law subject to our de novo or unlimited review. See *State v. Edwards*, 318 Kan. 567, 570, 544 P.3d 815 (2024) (jurisdiction); *State v. Morningstar*, 299 Kan. 1236, 1240-41, 329 P.3d 1093 (2014) (interpretation of appellate court mandate and determination of whether district court complied with it on remand).

Applying our unlimited review, we affirm the *McMillan III* panel and hold the resentencing judge had jurisdiction to consider McMillan's departure motion, the mandate rule did not preclude consideration of the motion, and the judge should have considered the motion.

19

*Jurisdiction*

On remand from the *McMillan II* decision, McMillan essentially argued the fact his sentences were vacated brought the parties back to their original position and required sentencing anew, including consideration of his new departure motion. But the State counters that because the *McMillan II* panel did not find error or illegality relating to McMillan's original departure motion, the resentencing judge could not consider it.

The *McMillan III* panel found no controlling authority. 2023 WL 176653, at *4. But it noted that "the KSGA contemplates that both mitigating and aggravating factors should be considered whenever a district court decides whether to impose a departure sentence. See *State v. Jolly*, 301 Kan. 313, 321, 342 P.3d 935 (2015)." 2023 WL 176653, at *4; see K.S.A. 21-6815. It also cited K.S.A. 21-6819(b)(5), which states: "Upon resentencing, if the case remains a multiple conviction case the court shall follow all of the provisions of this section concerning the sentencing of multiple conviction cases." Finally, the panel found guidance in this court's holding in *Jamerson*, 309 Kan. at 218, that on remand a resentencing judge must correct the sentence by complying with KSGA requirements. The panel reasoned:

> "This means [the district court] must apply K.S.A. 2021 Supp. 21-6815 as its starting point in resentencing McMillan. And under that statute, the requirement that a district court impose the presumptive sentence in a case is intertwined with its authority to grant a departure. A district court must impose the presumptive sentence unless substantial and compelling reasons justify a departure sentence. Because the requirement to consider if substantial and compelling reasons supporting a departure exist is in the same provision as the requirement to impose the presumptive sentence under the guidelines, we find a district court can consider a departure whenever it is sentencing a defendant—including on remand for resentencing." 2023 WL 176653, at *5.

20

Before us, the State argues this holding made sense in *Jamerson* because, there, the defendant was being resentenced under a different grid box than the one used during the original sentence. Thus, the resentencing judge had to determine which number—the mitigated, middle, or aggravated number—in the grid box to use. In contrast here, according to the State, "correcting the illegality in defendant's sentence did not necessitate reconsideration of defendant's downward departure motion."

We conclude the State draws a distinction without a difference, especially because all sentences were vacated and sentencing essentially starts anew. As we have discussed, *Jamerson* considered the extent to which a district court "can . . . modify multiple sentences when only some of them are held to be illegal following a motion to correct an illegal sentence." 309 Kan. at 212. Applying the illegal sentencing statute, the *Jamerson* court also discussed what needed to happen on remand after an appellate court determined a sentence was illegal: "Reading K.S.A. 22-3504 for the correction of an illegal sentence and the KSGA together would logically advise that correcting an illegal sentence should follow the same statutory rules as resentencing after a remand." 309 Kan. at 216.

Extending the *Jamerson* rule here, a district court has jurisdiction on remand for resentencing to consider the existence of aggravating or mitigating factors consistent with the KSGA after an appellate court vacates a sentence and remands for a resentencing. We add that McMillan presented a new motion, arguing new factors, so the original sentencing judge's findings did not cover all facets of the motion. Both the original and new motion put into play the language of the KSGA stating that a "sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence." K.S.A. 21-6815(a). In a case involving a multiple count sentence, if an appellate court holds the sentences are illegal and vacates all sentences and thus new sentences need to be

21

imposed, the KSGA opens the door to consideration of departure issues the defendant may raise. Jurisdiction exists.

*Mandate Rule*

The resentencing judge seemed mostly concerned about the mandate rule and whether that constrained his consideration of the departure motion. The State also argues the *McMillan II* panel's mandate precluded consideration of McMillan's motion.

K.S.A. 20-108 and K.S.A. 60-2106(c) discuss the effect of the mandate. K.S.A. 20-108 requires district courts "to carry the judgment or decree of the appellate court into execution; and the same shall be carried into execution by proper proceedings, by such district court, according to the command of the appellate court made therein." Similarly, K.S.A. 60-2106(c) states that an appellate court's mandate "shall be controlling in the conduct of any further proceedings necessary in the district court."

As explained in *State v. Soto*, 310 Kan. 242, 252, 445 P.3d 1161 (2019), these statutes "enforce the hierarchy of Kansas courts, ensuring that appellate orders [are] not . . . ignored by lower courts. They were not designed to set up broad limits on subject matter jurisdiction once a case was remanded." In other words, "To the extent an appellate court has spoken, the district court must listen and, as required, act." 310 Kan. at 252. The mandate rule thus incorporates preclusion principles by preventing district courts from acting contrary to points finally settled by appellate courts. But the statutes do not prohibit district courts from taking other steps necessary to dispose of the case. "Such issues may have been allocated for decision in the district court in the first place and then untouched by appellate proceedings." 310 Kan. at 256.

We understand the resentencing judge's reading of *McMillan II* as setting out parameters for resentencing. But the panel did not address the departure motion, much

22

less the renewed departure motion filed on remand. The motion thus falls into the category *Soto* referred to as a matter "untouched by appellate proceedings." 310 Kan. at 256. Thus, the mandate rule did not preclude the resentencing judge's consideration of McMillan's departure motion raised after remand to correct an illegal sentence. The KSGA would allow the imposition of the presumptive sentence set out by the *McMillan II* panel only if the judge did not find substantial and compelling reasons to depart. K.S.A. 21-6815. Further, because this case involved a complete resentencing on remand after all counts had been vacated, the *McMillan II* holding opened the door for sentencing anew, and the mandate rule did not prevent the resentencing judge from considering McMillan's departure motion.

We finally note that no party briefed whether the law of the case or any other preclusive doctrine means the *McMillan III* panel should have accepted the *McMillan II* order that vacated the sentences or whether those doctrines would change our analysis about consideration of the departure motion. The law-of-the-case doctrine "prevents a party from relitigating an issue already decided on appeal in successive stages of the same proceeding." *State v. Parry*, 305 Kan. 1189, 1194, 390 P.3d 879 (2017). While an appellate court may raise questions of preclusion sua sponte, see *Parry*, 305 Kan. at 1194, we decline to do so without having permitted the parties to brief the various doctrines' application on a motion for illegal sentence—a motion that can be raised at any time. We raise the point only to explain why it is not addressed and to caution that our holdings do not account for the effect those doctrines might have on the issues.

CONCLUSION

McMillan suffered two rounds of flawed sentencing. The first round failed to designate a primary crime and failed to specify sentencing terms for each count. The second round did not begin anew by considering McMillan's departure motion or other considerations in K.S.A. 21-6815. We vacate McMillan's sentences and remand to the

23

district court for sentencing anew after considering any departure or other motion, the parties' arguments, and relevant provisions of the KSGA.

Judgment of the Court of Appeals vacating the judgment of the district court is affirmed in part and reversed in part. Judgment of the district court is vacated, and the case is remanded with directions.