IN THE COURT OF APPEALS OF THE STATE OF KANSAS

No. 126,524

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL COLLINS SMITH,
*Appellant*.

SYLLABUS BY THE COURT

1.

When an appellate court reverses a conviction designated as the primary crime in a multiple conviction case, resentencing in the district court is mandatory under K.S.A. 21-6819(b)(5), despite whether the reversed charge is retried or dismissed on remand.

2.

When a defendant's original, multiple conviction sentence must be modified under K.S.A. 21-6819(b)(5) due to reversal of a conviction, that defendant lacks a reasonable expectation of finality in his or her sentence under a double jeopardy analysis until the mandated resentencing is completed by the district court.

Appeal from Johnson District Court; THOMAS M. SUTHERLAND, judge. Submitted without oral argument. Opinion filed September 20, 2024. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant, and *Michael C. Smith*, appellant pro se.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

1

Before ISHERWOOD, P.J., WARNER and COBLE, JJ.

COBLE, J.: After a panel of this court reversed Michael Collins Smith's primary conviction in his multiple conviction case, the district court resentenced Smith after redesignating a primary conviction under K.S.A. 21-6819(b)(5). On appeal, Smith argues the district court lacked jurisdiction to resentence him because he had completed the incarceration portion of his sentence before the district court corrected it, and alternatively argues his new sentence violated his right against double jeopardy. But Smith's arguments are contrary to Kansas precedent, and we affirm the district court's sentence based on Smith's new primary conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In February 2019, a jury convicted Smith of voluntary manslaughter, attempted voluntary manslaughter, aggravated endangerment of a child, and criminal possession of a firearm. As a result of this conviction and consideration of his criminal history and all sentencing factors under the revised Kansas Sentencing Guidelines Act (KSGA), the district court sentenced him to a total of 279 months' imprisonment followed by 36 months' postrelease supervision. This sentence was calculated by categorizing Smith as a criminal history score A and designating his primary crime as the voluntary manslaughter conviction on which he was given 233 months' imprisonment, the standard presumptive sentence under the KSGA. The district court ordered the sentences imposed on the remaining lesser convictions—32, 6, and 8 months, respectively—to run consecutive to the primary term of imprisonment. See *State v. Smith*, No. 121,332, 2021 WL 4501835, at *19 (Kan. App. 2021) (unpublished opinion).

On Smith's direct appeal, our court found the district court erred when it denied Smith's request for a jury instruction on the lesser included offense of imperfect self-defense involuntary manslaughter. Accordingly, our court reversed Smith's conviction for

2

voluntary manslaughter, vacated the corresponding sentence, and remanded the case to the district court for a new trial on the voluntary manslaughter charge. 2021 WL 4501835, at *11-12.

The State did not pursue a retrial on the voluntary manslaughter charge on remand and the district court dismissed the charge with prejudice in February 2023.

Following the dismissal, Smith opposed resentencing of his three remaining convictions affirmed by this court on direct appeal. Smith argued the district court did not have jurisdiction to correct his sentence because he already served his originally imposed prison sentences for those three, non-primary convictions—that is, the 46 months' imprisonment imposed for the three lesser crimes—and he sought immediate release. The Kansas Department of Corrections (KDOC) released him to postrelease supervision on May 10, 2022, and he continued to be held in the Johnson County Detention Center on a detainer.

After some back and forth from the parties, the district court held a hearing on March 24, 2023, and found Smith's sentence was unlawful because it did "not have his criminal history score applied to the base sentence, rendering it illegal due to failure to comply with [K.S.A. 21-6819]." After noting an illegal sentence may be corrected at any time, the district court opined "the issue appears to be whether [Smith] is still serving his sentence. If [he] is still on post-release supervision, he is still serving his sentence." The district court determined it had jurisdiction to correct Smith's sentence because Smith was still serving his postrelease supervision, noting the supervision period ran from May 10, 2022, to May 10, 2024. Smith moved for reconsideration, but the district court denied his request and his motion for immediate release. Ultimately, the district court resentenced Smith to 144 months' imprisonment, designating the attempted voluntary manslaughter conviction as the primary crime on which to apply his criminal history.

3

Smith appeals.

## THE DISTRICT COURT DID NOT ERR IN RESENTENCING SMITH

Smith offers two primary arguments on appeal. First, he claims the district court lacked jurisdiction to correct his illegal sentence because he had already completed the prison term originally imposed on the three non-primary crimes when the district court resentenced him on remand. Despite acknowledging he had not completed his postrelease supervision—which he also recognizes is part of a "'complete sentence'"—Smith argues that "[t]he only illegal sentence claimed in this case was the prison sentence," therefore the district court lacked jurisdiction to correct the sentence after he completed it. Second, he argues the district court violated his right against double jeopardy when it resentenced him and forced him to serve a sentence he had already served. We find neither argument persuasive but address each in turn.

*The district court had jurisdiction over Smith's resentencing.*

Smith's first argument is based on K.S.A. 22-3504(a), which authorizes Kansas courts to "correct an illegal sentence at any time *while the defendant is serving such sentence*." (Emphasis added.) According to Smith, he had completed "such sentence" and therefore the district court lacked jurisdiction to correct his sentence under K.S.A. 22-3504(a). But the State argues this is an improper interpretation of the procedure used upon the reversal of one conviction in Smith's multiple conviction case. Instead, the State argues the district court was required to resentence Smith under K.S.A. 21-6819(b)(5). As a result: "When the State decided to dismiss the reversed charge[], pursuant to K.S.A. 21-6819(b)(5), Smith was awaiting sentencing under K.S.A. 21-6819(b)(5), [so] K.S.A. 22-3504 is inapplicable in this situation."

4

Resolution of this issue requires us to interpret various sentencing statutes, as "courts have 'no authority to modify a sentence unless plain statutory language provides such authority.'" *State v. McMillan*, 319 Kan. 239, 245-46, 553 P.3d 296 (2024) (quoting *State v. Guder*, 293 Kan. 763, 766, 267 P.3d 751 [2012]). This presents a question of law over which appellate courts have unlimited review. *State v. Betts*, 316 Kan. 191, 197, 514 P.3d 341 (2022). The most fundamental rule of statutory construction is that the intent of the Legislature governs if we can ascertain that intent. And we must first attempt to discover legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Keys*, 315 Kan. 690, 698, 510 P.3d 706 (2022).

Relevant here, when a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. *Keys*, 315 Kan. at 698. Where there is no ambiguity, the court need not resort to statutory construction. *Betts*, 316 Kan. at 198.

As the State argues, K.S.A. 21-6819(b)(5) controls situations where the primary count of conviction in a multiple conviction case is reversed on appeal:

> "In the event a conviction designated as the primary crime in a multiple conviction case is reversed on appeal, the appellate court shall remand the multiple conviction case for resentencing. Upon resentencing, if the case remains a multiple conviction case the court shall follow all the provisions of this section concerning the sentencing of multiple conviction cases."

Given this language, the State argues the district court was required to resentence Smith because (1) his primary crime of conviction was reversed on appeal and (2) the case remains a multiple conviction case. And as a result, the State argues the district court properly proceeded to resentence Smith following the provisions of K.S.A. 21-6819, which generally controls sentences for multiple convictions. See K.S.A. 21-6819(b)(2)

5

(directing to establish and apply criminal history to primary crime); K.S.A. 21-6819(b)(5) ("Nonbase sentences shall not have criminal history scores applied, . . . but base sentences shall have the full criminal history score assigned."). The State explains: "K.S.A. 22-3504 was enacted to correct a sentence *already imposed*, but illegal. In contrast, upon reversal of his primary conviction, which was subsequently dismissed by the State, Smith was awaiting a new sentencing, not serving an established sentence."

Smith argues the original appellate decision "did not reverse the primary conviction outright, as K.S.A. 21-6819(b)(5) contemplates, but reversed for a new trial, vacating only the sentence for the primary crime." But Smith does not support this point with any pertinent authority to suggest this difference is dispositive. Rather, we emphasize that the plain language of K.S.A. 21-6819(b)(5) requires a defendant be resentenced if (1) the primary conviction is reversed on appeal, and (2) the case includes multiple convictions on remand. Despite dismissal of the reversed count, K.S.A. 21-6819(b)(5) still applies.

When an appellate court reverses a conviction designated as the primary crime in a multiple conviction case, resentencing in the district court is mandatory under K.S.A. 21-6819(b)(5), despite whether the reversed charge is retried or dismissed on remand.

In multiple cases cited by both parties, courts used this procedure after a reversal of the primary crime in a multiple conviction case. For example, in *State v. Montgomery*, 34 Kan. App. 2d 511, 517-18, 120 P.3d 1151 (2005), our court remanded the case and directed the trial court to resentence the defendant using a new primary crime of conviction after his prior primary crime was reversed on appeal. Like here, the State did not pursue a new trial on the dismissed charge on remand and moved to correct the defendant's sentence—by establishing a new primary crime of conviction under the predecessor to K.S.A. 21-6819(b)(5)—after the completion of his imprisonment but while the defendant was serving his postrelease supervision. 34 Kan. App. 2d at 512-13.

6

The district court found the prior statute did not operate retroactively and denied the State's motion to correct the defendant's sentence, and the State appealed.

On appeal, our court determined the predecessor to K.S.A. 21-6819(b)(5) operated retroactively, and it found the district court retained jurisdiction to correct the defendant's sentence because the defendant was still serving his period of postrelease supervision:

> "Had Montgomery completely served his sentence for attempted rape and been discharged from KDOC custody at the time the State filed its motion, we would question whether the courts retained any jurisdiction over Montgomery to correct his sentence. However, at the time the State filed its motion, Montgomery was still serving his postrelease supervision term which was an integral component of his original sentence." 34 Kan. App. 2d at 517.

More recently, in *State v. Barker*, No. 117,901, 2018 WL 5093294, at *3 (Kan. App. 2018) (unpublished opinion) (*Barker II*), the defendant was convicted of multiple crimes, but the primary crime was reversed by this court on appeal. See *State v. Barker*, No. 81,092, unpublished opinion filed May 26, 2000 (Kan. App.) (*Barker I*). And like here, the State declined to retry the crime on remand. The district court resentenced the defendant based on a new primary conviction and base sentence, and the defendant appealed, arguing the district court lacked jurisdiction to resentence him. *Barker II*, 2018 WL 5093294, at *1. Our court followed *Montgomery* and concluded the district court did not err in resentencing the defendant because the statute required it: "When the court reversed the conviction of Barker's primary crime and the State declined to retry it, the district court had to follow the sentencing provisions of K.S.A. 2000 Supp. 21-4720(b)(5) [the predecessor to K.S.A. 21-6819(b)(5)]." *Barker II*, 2018 WL 5093294, at *3.

Smith unpersuasively tries to distinguish his claim from these cases because of later amendments to the illegal sentence statute. He claims when *Montgomery* and *Barker II* were decided, courts could correct an illegal sentence at any time, citing K.S.A. 22-

7

3504(1) (Torrence). Then, in 2019, the Legislature amended this law, which now permits the courts to modify an illegal sentence only "*while the defendant is serving such sentence*." (Emphasis added.) K.S.A. 2019 Supp. 22-3504(a).

To support his argument, Smith points to the components of a "complete sentence" identified in K.S.A. 21-6804(e)(2): "the complete sentence . . . shall include the: (A) Prison sentence; (B) maximum potential reduction to such sentence as a result of good time; and (C) period of postrelease supervision at the sentence hearing." According to Smith, the plain language of subsection (e)(2) shows a prison sentence is separate and distinct from postrelease.

Based on this interpretation of K.S.A. 21-6804(e)(2), Smith reasons he had completed the prison sentence portion of his sentence before his resentencing. Put simply, Smith argues that K.S.A. 2019 Supp. 22-3504(a)'s use of "such sentence," rather than "complete sentence"—as the phrase is used under K.S.A. 21-6804(e)(2)—directs courts to correct only the illegal portion of the sentence. Here, Smith maintains the only illegal sentence in his case was his prison sentence.

But Smith does not support his point with pertinent authority or show why his argument is sound despite lacking authority. See *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020) (failing to support a point with pertinent authority, or failing to show why it is sound despite a lack of supporting authority, is like failing to brief the issue). In *Montgomery*, the panel questioned whether it would have jurisdiction if the defendant had "completely served his sentence for attempted rape and been discharged from KDOC custody at the time the State filed its motion." 34 Kan. App. 2d at 517. Here, Smith neither presents an argument nor designates a record to show he had completely served his sentence and was discharged from KDOC custody; instead, the record shows he was released to postrelease supervision.

8

Moreover, Smith acknowledges multiple cases in which our Supreme Court found postrelease supervision is part of a defendant's sentence. See *State v. Mossman*, 294 Kan. 901, 907, 281 P.3d 153 (2012) ("[L]iftime postrelease supervision is undeniably part of a defendant's sentence."); *State v. Gaudina*, 284 Kan. 354, 362, 160 P.3d 854 (2007) ("The legislature mandated postrelease supervision as part of the complete sentence . . . ."). But Smith contends the *Gaudina* court supports his argument that "such sentence" under K.S.A. 22-3504(a) refers solely to the prison sentence because that is the only illegal portion of his sentence.

To Smith's point, the *Gaudina* court found a defendant's period of postrelease supervision is separate from the incarceration sentence. 284 Kan. at 362 (in discussing K.S.A. 21-4703[p], "the legislature clearly expressed that the postrelease supervision is a period when the defendant is released into the community—not a period while incarcerated—and occurs after confinement—not during confinement"). But he paints *Gaudina* with too broad a brush. There, the court considered this issue only from the perspective of awarding jail credit to a period of postrelease supervision—which the *Gaudina* court concluded it lacked the statutory authority to award. 284 Kan. at 362-63.

Interestingly, Smith's argument relies on the 2019 amendment to the statutory language of K.S.A. 22-3504(a), but the caselaw he provides to support his argument interprets the prior version of this statute permitting correction of a sentence at any time. So, although he may be able to point to some cases that support his position that postrelease supervision is a period distinct from a defendant's incarceration period under some circumstances, Smith has not shown how this distinction is relevant to the "such sentence" amendment under K.S.A. 22-3504(a).

But even if his argument were persuasive, and his prison sentence were separated from his postrelease supervision period, Smith also fails to show his originally imposed period of postrelease supervision is not also illegal, requiring resentencing. Our court

9

vacated Smith's complete sentence on the reversed primary conviction, and as required by K.S.A. 21-6804(e)(2), Smith's postrelease supervision term is part of his complete sentence. And, under K.S.A. 21-6819(b)(4): "The postrelease supervision term will reflect only the longest such term assigned to any of the crimes for which consecutive sentences are imposed. Supervision periods shall not be aggregated."

Here, the record shows the district court originally ordered 36 months' postrelease supervision given the designation of voluntary manslaughter as his primary crime. But that conviction and related postrelease term was reversed on appeal. The journal entry also shows a period of 24 months of postrelease supervision imposed on the attempted voluntary manslaughter conviction, with the third and fourth convictions each carrying a 12-month period of postrelease supervision. As such, the district court's order of a 36-month period of postrelease supervision would be illegal because the new primary crime of attempted voluntary manslaughter only carries a 24-month postrelease supervision sentence. Resentencing was necessary to impose a legal sentence—a shorter term of supervision for the new primary crime.

Put simply, Smith has not shown we should depart from the guidance offered in *Montgomery* and *Barker II* indicating the district court properly resentenced Smith based on a new primary crime of conviction under K.S.A. 21-6819(b)(5) after this court reversed the prior primary conviction. Had Smith's complete sentence been finished prior to the resentencing, then Smith's argument under *Montgomery* may be persuasive. But where he was still serving his postrelease supervision term, the district court correctly determined it was required to resentence Smith based on a new primary conviction.

RESENTENCING DID NOT VIOLATE SMITH'S RIGHT AGAINST DOUBLE JEOPARDY

In Smith's second issue on appeal, raised in his pro se supplemental brief, he argues the district court violated his right against double jeopardy when it resentenced

him and forced him to serve a sentence he believes he already served. Smith argues the KDOC provided him a certificate of release, which gave him an expectation of finality in his prison sentence because it was fully completed. However, when a defendant's original, multiple conviction sentence must be modified under K.S.A. 21-6819(b)(5) due to reversal of a conviction, that defendant lacks a reasonable expectation of finality in his or her sentence under a double jeopardy analysis until the mandated resentencing is completed by the district court.

The Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights both offer guarantees that "[n]o person shall . . . be twice put in jeopardy for the same offense." Along with the most-recognizable rights against a second prosecution for the same offense after an acquittal or conviction, the prohibition against double jeopardy also "'protects against multiple punishments for the same offense.'" *State v. Lehman*, 308 Kan. 1089, 1093-94, 427 P.3d 840 (2018) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 [1969]; citing *State v. Freeman*, 236 Kan. 274, 280-81, 689 P.2d 885 [1984] [same test under Kansas Constitution as under United States Constitution]). Whether a double jeopardy violation occurs under either the United States or Kansas Constitutions is a question of law subject to our unlimited review. *Lehman*, 308 Kan. at 1094.

Directing our analysis here is our Supreme Court's 2018 decision in *Lehman*. In that case, our Supreme Court was faced with a situation where the district court extended the defendant's original term of postrelease supervision due to an alleged illegal sentence, but after that originally imposed term of supervision had ended. The *Lehman* court relied on United States Supreme Court precedent to reiterate that "when considering whether a subsequent increase in the severity of a criminal sentence constitutes a double jeopardy violation, the appropriate inquiry is whether the defendant had a legitimate expectation of finality in his or her sentence." 308 Kan. at 1094 (citing *United States v. DiFrancesco,* 449 U.S. 117, 135-36, 101 S. Ct. 426, 66 L. Ed. 2d 328 [1980]).

11

The court in *Lehman* determined the defendant had completed his "court-ordered judgment of sentence" before the State moved to correct it. 308 Kan. at 1098. But crucial to our analysis, the *Lehman* court opined that if the defendant were "deemed to have remained on postrelease supervision after his [prison] sentence expired but before any other court order, 'he [would] still be under a sentence.'" 308 Kan. at 1098. Yet because Lehman was released from both prison and postrelease supervision, the *Lehman* court concluded that when he completed his original sentence, even if that original sentence was illegal, "he was no longer subject to the jurisdiction of the criminal justice system. Any additional sentence imposed on him for the same offense after completing the original sentence constitutes a multiple punishment proscribed by the double jeopardy provisions of our federal and state constitutions." 308 Kan. at 1099.

As emphasized by our Supreme Court in *Lehman*, our double jeopardy analysis must examine whether Smith had a legitimate expectation of finality in his original sentence. 308 Kan. at 1094. Here, we find he did not.

Unlike in *Lehman*—where the State, not Lehman, belatedly sought the modification of his sentence after discovery of an error—here, Smith bore no expectation of finality in his sentence pending the conclusion of his direct appeal and resulting resentencing. Smith sought to reverse his conviction, and thus his sentence, on direct appeal and, at least as to count 1, was successful in his endeavor. See *Smith*, 2021 WL 4501835, at \*12. Whether the State had decided to retry the case, or whether it dismissed the charge, Smith's criminal proceedings remained unsettled pending complete resolution of the reversed and remanded voluntary manslaughter charge. And, because the charge was reversed, K.S.A. 21-6819(b)(5) mandated his resentencing. Ultimately, his expectation of finality would not have emerged until his resentencing on remand was complete. Put another way, Smith could bear no expectation of finality in his sentence, despite the dismissal of count 1, because under the KSGA, that sentence was illegal so long as no primary crime was designated on which to apply his criminal history. See

12

K.S.A. 21-6819(b)(5); see also *United States v. Rourke*, 984 F.2d 1063, 1066 (10th Cir. 1992) (finding that a defendant "cannot acquire a legitimate expectation of finality in a sentence which is illegal, because such a sentence remains subject to modification").

*Conclusion*

The district court properly resentenced Smith as mandated by K.S.A. 21-6819(b)(5) after a panel of this court reversed his primary conviction on which his sentence was based, and the State declined to pursue a new trial on that reversed charge. The district court retained jurisdiction to resentence Smith because he had not yet completed his total sentence—which included his period of postrelease supervision. Smith's resentencing did not violate double jeopardy either, because he bore no reasonable expectation of finality on his original sentence where his direct appeal was successful and he awaited resolution of his resentencing—again, as required by K.S.A. 21-6819(b)(5)—on remand.

Affirmed.